SEABORN J. BAGGETT V. JESSE R. McKENZIE ET AL.

The plaintiff took W.'s bond for title to a tract of land in Dallas county, the title to be made as soon as W. "could obtain a patent therefor, or otherwise come at a title." W.'s head-right certificate had been previously filed on the land, but no mention of this fact was made in the bond, and the certificate was left subject to the control of W. Subsequently W., without the knowledge of the plaintiff, lifted the certificate from the land mentioned in the title bond, and transferred it to M., who located it on land in Johnson county. The plaintiff sued W. and M., charging them with fraud and collusion, praying judgment for his damages, and that the land located by M., in Johnson county, be subjected to the judgment, or that title thereto be decreed to him, the plaintiff. There was no evidence fixing fraud, collusion, or notice upon M., and the plaintiff had taken no steps to disable W. from lifting and transferring the certificate: *Held*, that the plaintiff was entitled to judgment for damages against W., but not to any recovery or relief as against M., or the land located by him under the certificate.

ERROR from Johnson. The case was tried before Hon. NAT. M. BURFORD, one of the district judges.

This action was brought on the 2d of March, 1859, by S. J. Baggett against Joab Watson and J. R. McKenzie. The plaintiff alleged in his petition that, on the 14th of February, 1852, the defendant, Watson, executed to him his bond for title to a tract of two hundred and twenty-three acres of land in Dallas county, upon which the head-right certificate of Watson had previously been located, and that the said Watson, on the 20th of June, 1857, raised the certificate from the land specified in the bond, and

thus, without the knowledge or consent of plaintiff, left the said land vacant, and it was taken up by other parties before the plaintiff discovered that Watson had so left it vacant, to the plaintiff's damage $500. And, further, the plaintiff avers that the said Watson could have procured a patent for the said land by the use of reasonable diligence; but that he fraudulently colluded with his co-defendant, McKenzie, and re-located the certificate upon other land in Johnson county, and McKenzie had purchased the land so re-located from Watson, but with full knowledge of the fact that the plaintiff held said Watson's bond for the tract in Dallas county, on which the certificate had been first located. That Watson is notoriously insolvent, and plaintiff can only have relief by having the land in Johnson county subjected to his rights by decree of the court. And he prays for a decree accordingly, and for judgment for his damages against the defendants. Watson's bond to make title to Baggett was filed with the petition. It stipulated that the title should be made as soon as Watson should obtain a patent for the land, "or otherwise come at a title."

The opinion of this court sufficiently indicates the other material facts.

There was a verdict in favor of the defendant, McKenzie, but against Watson, for $250 damages. The plaintiff moved for a new trial as against McKenzie, but the motion was overruled

*J. W. Berry*, for the plaintiff in error.

*J. W. Ferris*, for the defendant in error.

MOORE, C. J.—It cannot be seriously contended that the bond from Watson to Baggett for the two hundred and twenty-three acres of land in Dallas county conferred upon Baggett any title or interest in the land subsequently

located by McKenzie in Johnson county.   McKenzie was neither a party nor privy to the bond, nor is there the slightest evidence to show that he had any knowledge of the existence of such an instrument until after his purchase of the certificate from Watson, and its location upon the land in Johnson county.   The plaintiff, Baggett, insists that, as Watson's certificate was filed upon the land described in his title bond at the date of his contract, the bond for title to the land from Watson vested in him a title to the certificate, although the certificate is not referred to or mentioned in the bond.   But if this proposition be conceded it does not strengthen his case.   He left the certificate subject to the control of Watson, and cannot complain if thereby he have lost the interest in it which he might otherwise have asserted.   If his title bond gave Baggett an interest in the certificate, had he exercised the slightest diligence or reasonable prudence, he would have had it duly authenticated and deposited in the general land office, with the field-notes of the survey, and thus have prevented Watson from lifting it from the land, or procuring the unlocated balance of the certificate which he sold to McKenzie.   Having failed to do this, he must be postponed to the subsequent purchaser, who in good faith has acquired the better right to the certificate.   But his bond was not for the certificate, and neither refers to nor mentions it; and when it is lifted from the land, if he can maintain a title to the certificate, it is by estoppel rather than under the title bond for the land upon which it had been located, and he could claim no title of this sort against a third party who has in good faith purchased and has a *bona fide* and legal title to the certificate; much less can he sustain such a claim against other lands located by such purchaser under the certificate.

There is no error in the judgment, and it is

AFFIRMED.