## E. B. SMYTH, ET AL. v. W. G. VEAL.

SUPREME COURT, AUSTIN TERM, 1883.

*Title—Rights of purchaser under located certificate.*—When a man locates a certificate and sells the land before the title is perfected, there is implied in the very act of sale, an undertaking on his part that he will do no act to prevent the perfecting of the title to the land sold. And so the purchaser might file his bond or deed in the Land Office, thus preventing his vendor from raising the certificate; even whether the former had actually bought the certificate or not; and whether the certificate was mentioned in the deed or not.

Vide statement and opinion for peculiar case of facts.

Appeal from Limestone County.

Appellants, E. B. Smyth, J. W. Townsend, Joe. H. McCain and Elizabeth Wood (plaintiffs below) brought this suit, (No. 1016) in the district court of Limestone county on the 5th day of October, 1875, and on the 7th day of March, 1878, filed their "amended original petition," which under rule 14 of the dictrict court, supercedes the original petition, against W. G. Veal, appellee, for the possession of the headright certificate No. 155 of $\frac{1}{3}$ of a league of land issued to William Anglin by the Board of Land Commissioners for Robertson county, Texas, on the 3rd day of May, 1838, and to have a fraudulent transfer to said certificate made by said William Anglin to appellee, Veal, on June 19th, 1871, declared to be null and void, and of no effect, (see transcript from pp. 1 to 6 inclusive), and setting out in said 'amended original petition,' that said William Anglin had said certificate located upon a certain tract of land lying in Limestone county, Texas, giving the field notes of said land. That the proper returns of said location were made to the General Land Office of the State of Texas, and filed therein. That after said location as aforesaid, and on the 27th day of Sept., 1845, said William Anglin conveyed 1088 acres of said land to Samuel Andrews, and on June 3rd, 1851, conveyed the balance of said land, 398$\frac{2}{3}$ acres to Abram Anglin, reciting in each of said conveyances, that the said

conveyances, that the said tracts, 1088 and 398⅔, were parts of the said William Anglin's headright of one third of a league. That plaintiffs are, and were at and before the institution of this suit, the owners of said land and said certificate, by virtue of regular and valid conveyances thereto, and that said Veal had full notice, both actual and constructive, that they were the owners thereof, at and before June 19th, 1871. That notwithstanding said Veal had such notice, and notwithstanding said William Anglin had long previously parted with his title to said certificate, he, Anglin, on June 19th, 1871, executed a fraudulent transfer thereof to said defendant, and that said Veal is now setting up title to said certificate under said fraudulent transfer. That said transfer is a cloud upon plaintiffs' title to said certificate, and a damage to them. That said Veal got possession of said certificate on Jan. 15th, 1872. That though plaintiffs have often demanded of defendant the delivery of said certificate, he has failed to do so. (See Tr. p. 1 to 4.)

The appellee, defendant below, by his 'amended original answer,' filed March 4th, 1878, amending his original answer filed on February 16th, 1876, plead, 1st, General denial. 2nd, Special denial, that William Anglin fraudulently conveyed said certificate to him, or that he fraudulently received a conveyance thereto, or was guilty of any fraud in connection therewith by transfer or otherwise, or had any notice, actual or constructive, that plaintiffs had any right, title or claim to said certificate. 3rd, That if said certificate was located on the land described in plaintiffs petition, and was conveyed to plaintiffs as therein alleged, said location was null and void, and that no land was appropriated thereby, for the reason that a prior valid and subsisting grant had passed the title out of the government to said land, and this fact being ascertained, in as much as Anglin had conveyed said land by general covenants of warranty of title, for the benefit of his vendees, and to make good his covenants of warranty, he purchased said prior title which was outstanding and paramount, inured to and perfected the title in said vendees, and that plaintiffs, and those whose estate they have to said land have been in possession thereof for more than twenty-five years. 4th, The statute of limitations of two years, and prays for costs and general relief. (Tr. p. 7 to 9.)

The plaintiffs, by way of answer and replication to defendant's 'amended original answer,' filed March 4th, 1878, in their amended

original petition, filed March 7th, 1878, plead, 1st, General denial to said amended original answer. 2nd, That if said William Anglin purchased any prior title to said land he did so for the purpose of perfecting the title of his vendees thereto, under and by virtue of his said location under said certificate. 3rd, By way of replication to the plea of the statute of limitation of two years, pleaded by defendant, that said defendant did not obtain the possession of said certificate until January 15th, 1872, and then he obtained possession thereof from the Commissioner of the General Land Office of the State of Texas, where plaintiffs had it deposited and filed; and that on or about the 1st of January, 1873, defendant procured it to be re-located on land in Wichita county, and so far as said Veal is concerned, the location by him in Wichita, merged the certificate into realty, and the statute of limitation of two years cannot avail him, and that on July 25th, 1873, defendant had said certificate returned to said Land Office. (Tr. pp. 5 to 6.)

And plaintiffs pray, that defendant be required to deliver said transfer, of said certificate to him, into open court, and that it be decreed to be null and void, and of no effect; that defendant be ordered to deliver said certificate to them; that they have judgment therefor; and in case they cannot obtain possession thereof, and defendant refuses to deliver it to them, judgment for the value thereof, and that said land in Wichita county be held in trust for them for costs and for general relief. (Tr. p. 6.)

A verdict was rendered for the defendant, March 9th, 1878, and a judgment was rendered accordingly, and that defendant have and recover of plaintiffs his costs. (Tr. p. 13.) Plaintiffs made a motion for a new trial, March 11th, 1878, which being overruled, they gave notice of appeal to the Supreme Court. (Tr. pp. 17 and 18.)

There are five assignments of error, the first two of which present the charge of the court, as follows :

"1st. The court erred in the first clause of the charge to the jury in charging that when one purchases land under a certificate located, and it afterwards turns out that the land upon which it was located was appropriated by an older and superior title, and the vendor afterwards perfects the title to his vendees, who thereby relieves himself from liability on his warranty to his vendees, or if his vendees hold the possession under a claim of title for a sufficient length of time to bar the right of entry, the vendees have no right or in-

terest in the certificate and the vendor may raise the certificate and re-locate, sell or dispose of it to a purchaser, and the purchaser would obtain a valid title to the certificate, and if you believe from the evidence that the plaintiffs and their vendors bought the land attempted to be located by the certificate, and went into possession under it, and that their vendor afterwards acquired the title to the land, and conveyed it to his vendee, under the old grant, they acquired all they were entitled to under the certificate, had the certificate held the land, and if you so believe, you will find for the defendant, otherwise you will find for the plaintiffs." For assignments of error, see transcript, pp. 21 and 22. For charge, see transcript pp. 13 to 14.

The second assignment of error is as follows, viz: "The court erred in the second clause of the charge to the jury in charging that "if you believe from the evidence that the defendant had and held possession of the certificate under his purchase from Anglin for the space of two years or more, next before the filing of this suit, you will find for the defendent on the statute of limitation of two years, otherwise you will find for the plaintiffs," because said clause was calculated to mislead the jury, and because said clause does not state the character of possession necessary to complete the bar un der said statute."

The remaining assignments are not material and are not discussed by counsel.

STATEMENT.

Plaintiffs proved the following facts, viz : 1st, the issuance of the certificate to William Anglin on May 3rd, 1838, the location thereof by him on the land described in their petition on June 10th, 1839, and the proper returns thereof with the field notes to the General Land Office, and the filing of said certificate and field notes in said office, as alleged by him. Tr. pp. 9 to 10. 2nd, That said William Anglin on Sept. 27th, 1845, sold and conveyed to Samuel Andrews by a regular and full warranty deed, 1088 acres of said land, setting out said 1088 acres by metes and bounds, and reciting in said deed that said 1088 acres, "was to be taken off the south part of the said William Anglin's headright of one-third of a league of land," hereby selling and conveying to the said Samuel Andrews all my right, title, interest and claim that I am in possession of, hereby selling and conveying to the said Samuel Andrews the aforesaid premises with

all and singular, the appurtenances thereunto belonging. Tr. p. 10. 3rd, And on June 3rd, 1851 said Wm. Anglin, sold and conveyed, by a regular and full warranty deed, to Abram Anglin the remaining portion of said land under said location, 398⅔ acres, giving description thereof by metes and bounds, and reciting in said deed that said 398⅔ acres "is a part of my (Wm. Anglin's) headright of one-third of a league of land," and "to have and to hold the same to him, the said Abram Anglin, his heirs and assigns forever, together with all the appurtenances thereunto belonging." Tr. pp. 10–11. 4th, That they were the owners of said one-third of a league of land, by regular and full warranty deeds from said Samuel Andrews and Abram Anglin down to them, and that each and all of said deeds contained the same recitations and descriptions that the deeds from said William Anglin to said Andrews and Abram Anglin contained. Tr. p. 11. See 3 Kent, p. 517, ninth edition.

They also proved that ther chain of title was properly recorded, before defendant bought the certificate.

Defendant proved that the location of said certificate by Anglin on said land was in conflict *in toto* with an older and a valid location, and that in consequence thereof no patent was issued to Anglin or his assignees, and the said certificate had no file mark upon it until re-lecated in Wichita county. Tr. p. 12.

Defendant also proved, that after the location of said certificate by Anglin on the land described in plaintiff's petition, and after Anglin had conveyed the land to Andrews and Abram Anglin, he made a compromise with Chas. A. Jacobs and Wm. Christy. (who plaintiffs admitted were the owners of said older grant) and accepted a conveyance from them in said land, which conveyance from them to said land, recited as follows, viz :

THE STATE OF TEXAS, ⎱ *Know all men by these presents :—*
   COUNTY OF LIMESTONE. ⎰ That we, Chas. A. Jacobs and William Christy, of the City of New Orleans and State of Louisiana, for and in consideration of Wm. Anglin having located his headright certificate on and improving a portion of our eleven league claim, received by chain of title from Andress Varella, and in further consideration of one dollar to us in hand paid, do hereby grant, bargain, sell and convey with a full warranty from all claims by, through or under us, as also against all claims commonly denominated eleven league claims, the following described tract of land," giving the

description thereof by metes and bounds. And plaintiffs admitted that said conveyance to Anglin from Jacobs and Christy, vested the title of said older grant to said land in Anglin.   Tr. pp. 12, 13.

Opinion by Delaney, J.

Our opinion is that there is no error in the judgment of the court below.

The facts of this case are somewhat peculiar, and we will state them in a few words.   In 1839, Wm. Anglin located his headright certificate of one third of a league, on land which is now in Limestone county.   In 1845 he conveyed a part of this land to Samuel Andrews, with full covenants of warranty, describing the land sold by metes and bounds, and adding as a part of the description that it was a part of his headright of one-third of a league of land.   In 1857 he conveyed the remainder in like manner to Abram Anglin. But the land was not patented—the certificate still remaining in the Land Office.   Some years afterwards (the date not given) Wm. Anglin discovering that he had located the certificate upon an older grant, purchased the entire third of a league from the owners of the older grant, and it passed to his vendees under his covenants of warranty, and they and their vendees hold it to this day.

The plaintiffs in this suit are the present holders and owners of the land under title.   It has come to them through a number of mesne conveyances—all describing it as above set forth, and all duly recorded in Limestone county.

But in 1871, Wm. Anglin, the original grantor of the certificate, sold it to the defendant, who located it upon lands in Wichita county.   Now the plaintiffs claim that, by reason of the premises above set forth, they are the owners, not only of the land in Limestone county, but also of the certificate; and that, as the owners of the certificate, they are entitled to the land in Wichita county upon which it has been located by the defendant.

They set forth their claim in this proposition :   "When the owner of a land certificate has it located upon land, and sells the land so located, referring to the land so sold as located under such certificate he thereby parts with his title to the certificate, and cannot afterwards abandon such location, or sell the certificate in prejudice of the rights of his former vendee."   And they refer us to Pasch. Dig. Arts 4301, 4302; Johns v. Pace 26 Texas, 270; Smyth v. Tucker, 25 Texas, 594; Baggett v. McKenzie, 28 Texas, 581, and some other au-

thorities. This proposition is in the main correct, and is fairly deducible from the cases cited by counsel. When a man locates a certificate and sells the land before the title is perfected, there is implied in the very act of sale, an undertaking on his part that he will do no act to prevent the perfecting of the title, to the land sold. There is therefore an implied agreement, that the vendor will not raise the certificate thus leave the land vacant in the hands of the purchaser. Or if the land thus located and sold should happen to be covered by an older or better title, the purchaser would have the right to demand that the certificate should not be raised, and he be left at the mercy of the holder of the superior title. And the purchaser might file his bond or deed in the land office, so as to notify the commissioner of his purchase, and thus prevent his vendor from raising the certificate. Baggett v. McKenzie, 28 Texas, 581. And this would be so, whether he had actually bought the certificate or not, and whether the certificate was mentioned in his deed or not. And it would be so, not because, in buying the land, he necessarily bought the certificate, but because the certificate may be, and in fact almost always is, necessary to enable him to get the benefit of what he has bought. And as here the certificate happens by mistake to be located upon an older title, the court would treat the purchaser of the land as the assignee of the certicate, if it were necessary to his protection, so as to enable him to locate it elsewhere. So general—indeed so nearly universal is this connexion of the certificate with the title to the land, that the impression has became general, that a sale of the land is a sale of the certificate. But that it is not always, and necessarily so, I think may be easily shown.

Let us suppose that A. locates a certificate and sells the land to B. and it turns out to be a forged certificate. According to the theory of appellants, the vendor would have a good title to the certificate, though he might have very little interest in the land. Now if A. should afterwards locate a genuine certificate upon the same land; who would be the owner of this second certificate? Certainly B. did not buy it, yet a court of equity would doubtless hold him entitled to the benefit of it, by reason of his purchase of the land. Now if B. in this last case should not only keep the land and the second certificate, but should bring suit against A. for the value of the first certificate, which he failed to get because it was void, his

position would very nearly resemble that of the plaintiffs in this suit. They have the tract of land which Anglin located. They admit that; and they have it by reason of the fact that Anglin bought the superior title, which passed to them. But upon their own theory, Anglin in buying the superior title, bought also the certificate which was part of that title, so that they have also a certificate for a third of a league. Yet they are now suing, not indeed for the value of the first certificate, because it is not void, but they sue for that certificate, and for the land upon which it is located. Thus we reach the rather startling result, that by the purchase of one-third of a league of land, the plaintiffs acquired a right to two land certificates, each for one-third of a league; and also to the two tracts of land located in different counties, and each tract containing one-third of a league. A result so extraordinary, must suggest a doubt as to the correctness of the principle. And a majority of the Commissioners hold that, when Anglin for the benefit of his vendees, bought in the superior title, he was discharged from all the obligations of his contract, and might dispose of the certificate as he chose.

The decisions referred to by appellants, deny the right of a vendor to float the certificate, only in the event such act on his part, would work an injury to his vendees; but when such act would not prejudice the vendee, we see no reason why it may not be done. In the case before us, Anglin sold the land, not the certificate; and after he had procured for his vendees a good title, we think his sale of the certificate, could work no harm to them unless they can demand, not merely a good title to the land; but a title by virtue of a particular certificate.

But there is another view of the case which we all agree must be fatal to the claim of appellants. The legal title to the certificate was in Anglin when he sold to appellee. There is no evidence in the record that appellee had any knowledge of the claim of appellants. And the record in Limestone county of the deeds under which appellants claim could not operate as constructive notice to the purchaser of the certificate which had all the time remained in the land office. If the plaintiffs or their vendors had desired to give notice of their claim to their certificate, they should have filed it in the land office. Baggett v. McKenzie, 28 Texas, 581.

Anglin having the legal title to the certificate and the possession (for he seems to have withdrawn it from the land office), a purchaser

from him without notice would take a good title. Law v. Berry, 22 Texas, 372.

We have not deemed it necessary to express any opinion concerning the charges of the court on the subject of limitation.

If there was error in those charges, it was immaterial, as the judgment could not properly have been otherwise than it was. We think, therefore, that it should be affirmed.