## H. C. Durrell v. George N. Farwell et al.

### No. 243.

**1. Surety Released.**

The president of the Presidio Live Stock Company was not personally liable for the payment of bonds issued by the stock company. He executed a mortgage upon land with power to sell to secure the said bonds; by so doing he made the land surety for the debt; and it would be discharged from liability by the same acts that would discharge an individual surety therefor .. ........................................................... 107

**2. Alteration of Contract Releases Surety.**

A surety is bound by the terms of his contract, and his liability can not be extended beyond it. If the contract be altered without his consent, whether he sustain injury or the change be to his advantage, it ceases to be his contract, and with that ceases his obligation ........................ .... 107

**3. Conditions in Deed of Trust.**

The Presidio Live Stock Company issued bonds, and to secure their payment (annual interest and principal) it executed a deed of trust empowering the trustee under specific conditions to make sale; place of sale is specified, and the proceeds to be applied to interest, etc. In the subsequent deed of trust upon land, his own property, by the president of the company, it was provided, that the trustee should sell "in the event the securities provided in said first mortgage shall have been duly and fully exhausted in accordance with the terms and provisions thereof, and the entire net proceeds thereof shall have been realized and applied towards the payment of what may be due upon said bonds and interest thereon; and in the event there shall then remain unpaid and unsatisfied any portion of the principal or interest of said bonds." * * * *Held*, that the land could not be rendered subject to the payment of the bonds until this condition be fulfilled. 108

**4. Same.**

In order for the bondholders to avail themselves of the additional security afforded by the deed of trust, they must have strictly followed its provisions and complied with its terms ........................................ 108

**5. Same.**

In the deed of trust executed by the company the bondholders had the right, upon default in payment of interest upon the bonds, to have the property

sold by the trustee in accordance with the requirements of that instrument; and this became a duty as to the land embraced in the second deed of trust, simply because it was so stipulated as a condition of liability. Having ignored the provisions in the first deed of trust, and having disposed of the property otherwise than was required, the conditions of liability of the land in the second deed of trust did not, nor could they, exist. The land could not be held liable ...................... ......... ....................... 108

ON REHEARING.

6. Practice in Supreme Court.
    This court will not reverse and render unless the facts be such that the court below could not properly have rendered any other judgment. See facts rendering it proper that the case should be remanded for new trial ....... 110

ERROR to Court of Civil Appeals for Fourth District, in an appeal from Brewster County.

In the petition for writ of error, it is stated that the defendants in error (except Mrs. E. L. Gage and the Presidio Live Stock Company) instituted suit in District Court of Brewster County, Texas, on February 10, 1893, against said Mrs. E. L. Gage and the Presidio Live Stock Company, for the sum of $87,665 and the foreclosure of a mortgage lien on 49,960 acres of land situated in Brewster and Buchel Counties; alleging that said Presidio Live Stock Company had given said bonds and had failed to pay them; and that one E. L. Gage during his life-time, he being dead at institution of suit, had given a mortgage on the land mentioned to secure the said bonds, and that defendant Mrs. Gage was his independent executrix, and that plaintiff in error was claiming said land.

It appeared from the petition that the Presidio Live Stock Company, to secure the same bonds, had given a mortgage on its property prior to the mortgage given by Gage on his individual property. The plaintiff in error, Durrell, claimed in his pleadings said land by purchase from Gage under execution sale, and claimed that the land was released from said mortgage, in that Gage hypothecated the land as a surety fund, and that by reason of the conduct of defendants in error and the Presidio Live Stock Company, inconsistent with the terms of said mortgage, and inconsistent with the right of Gage as surety. The judgment of the trial court was for the defendants in error, with a foreclosure of the lien against plaintiff in error upon the land. This judgment was affirmed by Court of Civil Appeals.

Writ of error is asked upon the following grounds:

1. The said Court of Civil Appeals erred in foreclosing the lien on the land as against the plaintiff in error, because it appeared from the record that no valid sale of the property of the Presidio Live Stock Company had been made, and said property had not been duly exhausted; and it is a condition precedent of the mortgage sued on, which was pleaded by the plaintiff in error, and also by defendants in error, that the security covered by the first mortgage should be duly and fully exhausted before the land in controversy should be proceeded

against, the said Court of Civil Appeals having found that it was a condition precedent to the sale of the land that the security provided for in the first mortgage should be exhausted in accordance with the terms and provisions thereof; and having further found, that said securities had not been so exhausted, erred in holding that a foreclosure upon the land could be decreed until the performance of said condition or tender of such performance.

2.   In substance, that the bondholders having wasted their first security and misapplied its proceeds, and having violated the conditions of the first mortgage, the liability upon the land under the second mortgage had not accrued, etc.

Durrell was a purchaser of the land under an execution sale against Gage.   The sale was attacked, and consent of representatives of Gage was relied upon as to the mode of disposition of the first security.

The facts are set out sufficiently in the opinion of the court.

*W. Vansickle* and *Clark & Fuller*, for plaintiff in error.—Gage having expressly stipulated as the terms of his guaranty, that "the securities provided in said mortgage given by the Presidio Live Stock Company should be duly and fully exhausted in accordance with the terms and provisions thereof, and the entire net proceeds should be realized and applied towards the payment of what may be due upon said bonds and interest thereon before his land should become liable," a departure from such provision, and the use of such security inconsistent with the contract and mortgage, released appellant Durrell holding Gage's title.

Durrell was subrogated to all the rights of Gage:   Glaze v. Watson, 55 Texas, 563;  Willis v. Smith, 72 Texas, 565. .

The land was discharged of the mortgage by the conduct of the appellees:   Smith v. Montgomery, 3 Texas, 199; Walker v. Goldsmith, 7 Ore., 161; Cunningham v. Wrenn, 23 Ill., 64; Bank v. Douglas, 57 Ga., 205; Brandt on Surety. and Guar., 2 ed., 403–415; 3 Am. and Eng. Encyc. of Law, 911; Ryan v. Morton, 65 Texas, 258; Lane & Saylor v. Scott & Culver, 57 Texas, 367; Smith v. Bank, 74 Texas, 457; Groesbeeck v. Crow, 85 Texas, 200; Gardner, Admr., v. Watson, 76 Texas, 25; Fellows v. Prentess, 45 Am. Dec., 484; Wadsworth v. Allen, 56 Am. Dec., 137; Brandt on Surety. and Guar., secs. 373, 374.

*Clark & Fuller*, for plaintiff in error.—Upon proposition that the admitted conduct of the defendants in error, showing that the conditions upon which the land was bound as a guaranty fund not being complied with, released it:   Cunningham v. Wrenn, 23 Ill., 64; Ryan v. Morton, 65 Texas, 258; Walker v. Goldsmith, 7 Ore., 161; Evans v. Lawton, 34 Fed. Rep., 233; Sheldon v. Reynolds, 14 La., 703; Bank v. Douglas, 57 Ga., 205; Brandt on Surety. and Guar., 2 ed., secs. 403, 415, 387, 388; Colebrook on Col. Sec., secs. 239, 240.

Upon proposition that performance of the conditions of the undertaking in the manner stipulated having been rendered impossible by

defendants in error, they can not recover, and the land is released: Grice v. Noble, 59 Mich., 514; 5 Laws. Rights and Rem., sec. 2523, and notes; 3 Am. and Eng. Encyc. of Law, 911.

*Stanton & Turney, T. S. Miller,* and *R. L. Batts,* for defendants in error, on motion for rehearing argued: Where one mortgages a piece of property to secure a debt and disclaims personal liability, the property doubtless stands in the attitude of a surety, and there is no personal liability of the maker. Whether this is the case in the absence of an express disavowal of personal liability might be questioned. But this is not conceived material, inasmuch as certainly the land in this case stands with reference to the debt secured in the same attitude as Gage would have stood if, instead of offering special property as security for the debt, he had offered himself (that is, all his property) as security therefor. If then he could not have been considered a surety, the land would not have been. Or if, being a surety, the relationship was coupled with and surrounded by circumstances which took away the ordinary legal incidents of that relation, then the surety land would also in the same degree and to the same extent be affected by the circumstances. An effort has been made to show that Gage did not stand in a position to create the relation of suretyship or guaranty with the ordinary accidents of those relations, and that if he was a surety or guarantor at all, it was merely technically so. And so it must be with the land which he places in the stead of himself. As to this land, any defense may be made which Gage could have made, but coupled with its defenses are all the liabilities which he would have been compelled to assume. That which would have released Gage will release the land; that which would have placed liability on Gage will place liability on the land.

With these facts in view, another proposition of the court is considered. It is an expression taken from some of the cases which may be abstractly correct, but which is easily susceptible of an erroneous application. It says: "A surety is bound by the terms of his contract, and his liability can not be extended beyond it. If the contract be altered without his consent, whether he sustains injury, or, on the contrary, it be to his advantage, it ceases to be his contract, and with that ceases his obligation." The proposition can not be understood, except by a study of the cases out of which it has been evolved. Coulter, Judge, in Hibbs v. Rue, 4 Pennsylvania State, 348, says: "The contract by which a surety becomes bound is voluntary on his part, without profit or advantage, and without having in view the prospect of gain. It is an act of benevolence to the obligor and of convenience to the obligee, and of emphatic use to both."

So long as this is the case, and to the extent to which it may be true, good reason may appear for treating with strictness the obligation of the surety; but, favorite of the law, he is still not above the law, and can not escape the demands of equity.

"The principle on which sureties are released is not a mere shadow without substance. It is founded upon the restriction of the rights of the sureties, by which they are supposed to be injured." United States v. Hodge, 6 How., 283.

The well recognized rule, that a binding agreement for extension of time of the payment of an obligation releases the security, was primarily based upon the idea of a change prejudicial to the security.

It is a recognized rule of suretyship, that at any time after the maturity of the debt secured the surety may discharge the obligation and become subrogated to all the rights of the creditor. A binding contract of extension of time not only gives the creditor the right not to pay before the lapse of the time as extended, but it also gives the creditor the right not to be paid until that time. A substantial legal right is thus taken from the surety, and though the extension might in fact incidentally benefit him, he may invoke the results arising from the destruction of his legal right. "A release resulting from an extension of time is based upon the proposition that the contract is varied to his prejudice." Clagett v. Salmon, 5 Gill & J. (Md.), 314. "It is upon the principle that the contract of the surety is changed or varied to his prejudice, and without his consent, that the surety is discharged." Kent, Chancellor, in King v. Baldwin, 2 Johns. Ch., 554.

Based upon this reasoning of the law, a large number of cases may be cited in which there have been real and substantial changes in the contract, not merely departure from or violation of it, without releasing the surety. Sturges v. Robbins, 7 Mass., 301; Ellis v. McCormick, 1 Hilton (N. Y.), 313; Lowman v. Yates, 37 N. Y., 601; Kirby v. Studebaker, 15 Ind., 45; Benjamin v. Hillard, 23 How., 149; Ins. Co. v. Sedwick, 110 Mass., 165; Stewart v. McKea, 10 Exch., 675; United States v. Hodge, 6 How., 203; Harper v. Ins. Co., 56 Fed. Rep., 202; Saint v. Mfg. Co., 10 South. Rep. (Ala.), 538; Allen v. O'Donald, 28 Fed. Rep., 17; 141 U. S., 528.

Some of these authorities would justify a much broader statement, but at least fairly deducible from them is the proposition that a change in a contract, in order to release a surety, must be equivalent to the making of a new contract, and that it must result in fact, or in legal contemplation, to the prejudice of the surety. Without modification, the proposition quoted by the court is contrary to authority, and can not be commended as in entire accord with reason and equity. Again, there is authority for the proposition, that when the contract has been in fact changed, the surety is released to the extent of the change only. In Sweet v. Newbury, 52 Northwestern Reporter, 1005, a change in the contract was held not to release the surety in toto, but pro tanto only. In Lowman v. Yates, 37 New York, 601, this language was used: "The charge of the judge, that the extension of time of payment would not discharge the surety as to the residue of the bond beyond the amount of notes, * * * is unobjectionable. The taking of the notes for a less amount than the sum due upon the bond could at most but operate as

a discharge of the surety to the amount of the notes, and left him unaffected as to the remainder. * * * The theory upon which sureties are discharged is a suspension of their remedy over their right to demand that the creditor should sue the principal. * * * If any alteration was made in the contract, it was merely to the extent of the payment pro tanto, and there would appear to be no valid and satisfactory reason why the defendant has a right to claim any benefit beyond that." This has the sound of reason and equity.

BROWN, Associate Justice.—Farwell and others sued the Presidio Live Stock Company for a balance of $87,665, claimed to be due upon 220 bonds of said company, and also made H. C. Durrell, Anna D. Gage, executrix of the last will of E. L. Gage, deceased, and C. R. Mower, trustee, parties defendant, for the purpose of foreclosing a mortgage lien upon certain lands described in the petition.

The only controversy in the case was between plaintiffs and defendant Durrell over the foreclosure of the mortgage. Durrell filed several pleas, none of which are necessary to mention except one in the nature of a cross-bill, in which he set up title in himself to the land, and claimed that it had been discharged from liability for the payment of the bonds, and prayed for judgment for possession of the land.

The case was tried by the judge, a jury not being demanded, and judgment was entered in favor of the plaintiffs against the Presidio Live Stock Company for the balance remaining unpaid on the bonds and against all the defendants, foreclosing the lien of the mortgage on the lands. Durrell appealed, and the Court of Civil Appeals affirmed the judgment of the District Court.

The facts necessary to an understanding of the questions to be decided by this court are as follows:

The Presidio Live Stock Company, a corporation duly incorporated under the general laws of this State, on the 13th day of September, 1883, issued 220 bonds, aggregating the sum of $100,000, payable to bearer twenty years from date, or at the pleasure of the company after five years, bearing 6 per cent interest per annum, payable annually on the 1st day of September in each year.

To secure the payment of the bonds, the said company on the same day executed a deed of trust, whereby it conveyed to C. R. Mower, trustee, for the purpose of securing said bonds, all of its property, consisting of cattle, horses, ranch outfit, and leasehold interests in lands. This instrument contained the formal parts usual in such instruments, and the following paragraph:

"And it is provided further, that in the event default shall be made in the payment of the interest which shall become due or accrue upon said bonds, herein secured, or any of them, or any part thereof, or in the event default shall be made in the payment of the principal of said bonds, or any of them, or any part thereof, at the maturity of said bonds, then in either or every such case, default continuing for

thirty days, it shall be the duty of said trustee, at the request of a majority of the bondholders, or a majority of the holders of the coupons due and unpaid, forthwith to make a demand in writing on the president or secretary of the company that payment of said interest so due and unpaid, or of said principal of said bonds, as the case may be, shall forthwith be made; and if said company shall continue to make default in the payment of such interest or principal so due after said demand has been made by said trustee, for the space of thirty days, the said trustee shall, and he is hereby fully authorized and empowered to, enter upon and take possession of all and singular the above described property, or so much thereof as may be necessary, either in person or by such agent or agents, attorney or attorneys, as may be by him duly authorized thereunto in writing, and thereupon proceed to sell said above described property, or so much thereof as may be necessary to raise sufficient money to pay off and fully satisfy the said bonds then outstanding and all arrears of interest thereon, together with all costs and expenses of said sale and executing the trust hereby created, and attending to the business thereof, after advertising the same for the space of thirty days prior to the day of sale in some newspaper published in Presidio County, State of Texas, if any there are in said county, and in one daily newspaper published in the city of New York, setting forth the time, place, and terms of sale, giving a general description of the property intended to be sold; or the trustee executing this trust may make sale of said property without taking possession thereof, the same to be made in all other respects as herein provided, said sale to be made at public auction for cash in hand, at the court house door in the county of Presidio, State of Texas, to the highest bidder, said property to be sold in parcels or all together, as the said trustee may decree best for the interest of the holders of said bonds, and upon making such sale the said trustee shall execute to the purchaser or purchasers absolute deed or deeds, transfer or transfers, bill of sale, or bills of sale," etc.

The time and manner of giving notice was prescribed, and that the sale should be at the court house door in the county of Presidio, which county at that time embraced the territory now composing Brewster and a number of other counties.

E. L. Gage was the president and manager of the Presidio Live Stock Company, and a stockholder therein, and on the 14th day of November, 1883, made a deed of trust to the same trustee, conveying to him certain lands to secure the payment of the bonds of said company, from which we make the following extracts.

After conveying the land to Mower, trustee, in the usual form, the mortgage continues as follows:

"This conveyance is in trust, however, upon the following conditions, to wit:

"Whereas, I, said E. L. Gage, heretofore, to wit, upon the 22nd day of May, A. D. 1883, did lease certain lands in said county and State

to the Presidio Live Stock Company, a corporation duly incorporated under and by virtue of the laws of Texas, said lease contract being recorded in book number 2, pages 303 to 307, record of deeds, etc., of Presidio County, Texas; and whereas, I, said E. L. Gage, am a stockholder and officer of said company; and whereas, in prosecuting the business of said company, it was by said company deemed expedient to issue a series of bonds, to be secured by a mortgage on all its rights, franchises, and privileges, on all property of said company that has been or may be acquired, including lands and interest in lands, both that owned in fee simple and in less estate, and that held or that may be held by leasehold, on all live stock of every kind acquired or that may hereafter be acquired by said company, on all ranch outfits now owned or that may be hereafter acquired; and whereas, there were accordingly issued by said company sixty bonds for the sum of $1000 each, and sixty bonds for the sum of $500 each, and one hundred bonds for the sum of $100 each, amounting in all to the sum of $100,000 bonds; all of said bonds bearing date the first day of September, A. D. 1883, and payable to the bearer thereof, said bonds to be redeemable at any time after the expiration of five years from their date at the election and call of said company as thereinafter provided, and to be due and payable at all events twenty years after the date, etc.; * * * and whereas, the further securing by this instrument of the payment of said bonds will aid in the disposal thereof, and in securing a better price therefor, in consideration in part of which this conveyance in trust is made; now, therefore, the conditions of this trust are as follows, to wit:

"In the event said 220 bonds, amounting in all to $100,000, shall be fully paid, satisfied, and discharged, both principal and interest, according to their face, tenor, and effect, then this conveyance shall become void and of no further force and effect. But in the event the same or any part thereof shall not be fully paid, satisfied, and discharged, both principal and interest, according to their face, tenor, and effect, and in the event the securities provided in said mortgage shall have been duly and fully exhausted, in accordance with the terms and provisions thereof, and the entire net proceeds thereof shall have been realized and applied towards the payment of what may be due upon said bonds and interest thereon; and in the event there shall then remain unpaid and unsatisfied any portion of the principal or interest of said bonds, and default in the payment thereof continuing thereafter for thirty days, it shall be the duty of said trustee, at the request of a majority of the holders of the said bonds then unpaid, or of a majority of the holders of the coupons then due and unpaid, forthwith to enter upon and take possession of all and singular the above described lands, or so much thereof as may be necessary, and thereupon to proceed to sell said above described lands, or so much thereof as shall be necessary to pay off and fully satisfy the said bonds then outstanding, and all arrears of interest thereon, together with all costs, charges, and expenses of said sale and executing the trust hereby

created, and attending to the business thereof, after advertising the same for the space of ninety days prior to the date of sale, in some newspaper published in the county of Presidio, if any there be in said county, and if there be none, then in the nearest county in which there is published a newspaper, setting forth the time, place, and terms of sale, giving a description of the property intended to be sold; or the trustee executing this trust may make sale of said property without taking possession thereof, the same to be made in all other respects as herein provided; said sale to be made at public auction for cash in hand, at the court house door in the county of Presidio, State of Texas, to the highest bidder, said property to be sold either in parcels or all together, as said trustee may deem best for the interests of the holders of said bonds, and upon making such sale the said trustee shall execute to the purchaser or purchasers absolute deed or deeds, with customary covenants and warranty to the property by said trustee sold, and shall apply the net proceeds of said sale or sales."

Afterwards, by agreement of all parties, a portion of the lands was released, and E. L. Gage made another deed of trust conveying other lands in trust under the conditions and stipulations of the first deed of trust.

On the 4th day of August, 1891, Durrell purchased at sheriff's sale, under executions issued against E. L. Gage, all the lands embraced in both the first and second deeds of trust made by him. The sale was regularly made, and conveyed to Durrell all the title that Gage had at the date of the sale.

The uncontradicted evidence shows, that the bondholders removed E. L. Gage from the management of the property of the company, assumed sole and exclusive control of it by their representatives, sold it, and applied the proceeds to the payment of expenses, contrary to the provisions of the mortgage; the members of the committee representing the bondholders were then elected directors and officers of the company, and, acting as such in the interest of the bondholders, they sold the property, applying the proceeds to expenses and interest on the bonds, and finally, by concert of the officers of the company, who were bondholders themselves and representing the other bondholders, the property was sold contrary to the provisions of the mortgage, and purchased for the bondholders, being by them sold and converted to their own use.

The bondholders and E. L. Gage constituted the stockholders of the corporation.

The company having failed to pay interest for the years 1889, 1890, and 1891 to the amount of $9000, on December 6, 1892, the trustee, Mower, after having advertised the same according to the requirements of trust deed, sold the property of the Presidio Live Stock Company, at the court house door of Brewster County, instead of at the court house door of Presidio County, at which sale A. S. Gage, Tuttle, and Farwell bought the same for all the bondholders, giving credit on the bonds

for the sum of $21,500. The property was taken possession of by the representatives of the bondholders, who were, however, the same parties that had it in charge before, and sold much of it, and appropriated it all to the use of the bondholders.

The land sought to be foreclosed upon in this suit was leased to the Presidio Live Stock Company, and the bondholders took possession and now hold it, the lease having expired before the sale of the company's property.

The controlling question in this case is, was the land embraced in the mortgage made by Gage discharged from liability for the payment of the bonds by the acts of the bondholders and the Presidio Live Stock Company?

Gage was not personally liable for the payment of the bonds, but by making the mortgage or deed of trust he made the land surety for the debt, and it would be discharged from such liability by the same acts as would discharge an individual surety therefor. 24 Am. and Eng. Encyc. of Law, p. 722, sec. 6; Rowan v. Sharp's Rifle Mfg. Co., 33 Conn., 1; Price v. Dime Savings Bank, 124 Ill., 317; Walker v. Goldsmith, 7 Ore., 161.

"A surety is bound by the terms of his contract, and his liability can not be extended beyond it. If the contract be altered without his consent, whether he sustain injury or the contract be to his advantage, it ceases to be his contract, and with that ceases his obligation." Ryan v. Morton, 65 Texas, 260; Lane & Saylor v. Scott & Culver, 57 Texas, 370; Brandt on Surety., sec. 345; Robeson v. Roberts, 20 Ind., 155; Mayhew v. Boyd, 5 Md., 102; Watriss v. Pierce, 32 N. H., 560; Cunningham v. Wrenn, 23 Ill., 64; Smith v. Montgomery, 3 Texas, 209.

By the terms of the deed of trust, Gage made the land liable for the payment of the bonds upon the express condition that the property embraced in the deed of trust made by the Presidio Live Stock Company should first be exhausted under the terms of that instrument, which provided the manner in which that property might and in fact should be sold and the proceeds applied to the payment of the bonds. The land could not be rendered subject to the payment of the bonds until this condition be fulfilled, and it does not matter what circumstances may have transpired to cause a different method to be pursued by the bondholders, if they chose to adopt other methods, without the consent of Gage, while he owned the land, or defendant Durrell after his purchase, they could not hold the land liable. The language of the deed of trust executed by Gage, as quoted, does prescribe a condition precedent to the power of the trustee to sell, but the same language expresses the terms upon which alone the land could be made liable. It is true, that if these terms had been complied with the bondholders, upon showing that fact, might have resorted to a court to foreclose the deed of trust given by Gage; but a court could not have enforced it unless the trustee could have sold the land under the terms of liability fixed by the trust deed itself.

The terms of the deed of trust are unambiguous, the character of the agreement is legal, and it is not the province of the court to inquire into the motives which operated upon the parties in specifying the particular things to be done, nor whether or not the failure to do the very thing required was injurious to the surety; it must be enforced as the parties made it. In order for the bondholders to avail themselves of the additional security afforded by the Gage deed of trust, they must have strictly followed its provisions and complied with its terms. Mayhew v. Boyd, 5 Md., 102.

By the deed of trust made by the company the bondholders had the right, upon default in payment of interest upon their bonds, to have the property sold by the trustee in accordance with the requirements of that instrument, and this became a duty as to the land embraced in the Gage deed of trust, simply because it was so expressly stipulated as a condition of liability. Walker v. Goldsmith, 7 Ore., 161. Instead of pursuing the remedy prescribed, the bondholders removed Gage from the control of the property, assumed the sole and exclusive management of it by an executive committee of their own selection, and sold the property at private sale, shipping some out of the State; and in defiance of the express directions of the instrument, applied some of the proceeds to the payment of the expenses of the company. This was done after Durrell bought the land; at least the property was sold and proceeds used afterwards. It is said that Gage consented, but that does not affect Durrell, even if it were a matter of consent, and would bind Gage, although it rather seems to have been submission on the part of Gage rather than consent.

The bondholders' committee were then elected directors, president, and other officers of the company, and as such, acting for the bondholders, held the property and sold it at private sale contrary to the terms of the deed of trust, and finally, under a void sale, the property was taken possession of and converted by the bondholders to their own use, thereby making it impossible to comply with the conditions upon which the land was to become liable for the debt. It can not be said that this was not done with the consent of the company, for the bondholders were the stockholders of the company, and the same men that represented one, likewise represented and controlled the other.

This was a change in the contract in its most essential elements, the manner of disposing of the property itself. As between the company and the bondholders, the court might adjust the equities between the parties by charging the bondholders with the full value of the property thus sold and converted, because the company was liable for the debt, independent of the deed of trust; but as to the sureties, as before said, it is not a question of injury or benefit, but one purely of contract and legal liability.

The land described in the deed of trust from Gage to the trustee, Mower, was discharged from liability by these acts, and the trial court and Court of Civil Appeals erred in foreclosing the mortgage upon it.

The plaintiffs in the court below took possession of the land described in the deed of trust from Gage, and held it up to the trial, whether as mortgagees or under the lease from Gage to the Presidio Live Stock Company does not appear very distinctly, but they in this suit seek to foreclose upon the land under the deed of trust executed by Gage, and thereby assert that Gage had title in the land; hence, if Durrell has a right superior to theirs, he should have recovered the possession of the land. It is admitted that Durrell acquired the title of Gage, and we have seen that the deed of trust under which plaintiffs seek a foreclosure was discharged by their acts, and is no longer in force. It follows, that Durrell should have recovered possession of the lands from the plaintiffs, and the court erred in not so adjudging. It is ordered, that the judgments of the District Court and the Court of Civil Appeals be affirmed as to the Presidio Live Stock Company.

For the errors indicated, the judgments of the District Court and Court of Civil Appeals are reversed, and judgment will be here rendered in favor of the defendants, A. D. Gage, executrix, and in her own right, C. R. Mower, trustee, and H. C. Durrell, against plaintiffs; that the plaintiffs take nothing by their suit; that the said defendants go hence without day, discharged, and recover of the plaintiffs all the costs in this case. And it is further ordered, that judgment be entered in favor of defendant H. C. Durrell; that he recover of plaintiffs all the lands described in the judgment of the District Court, and that the clerk of the District Court issue a writ of possession in his favor.

*Reversed and rendered.*

Delivered March 11, 1895.

DENMAN, Associate Justice, did not sit in this case.

### ON MOTION FOR REHEARING.

BROWN, ASSOCIATE JUSTICE.—We have carefully considered the motion in this case, and find no reason to change our views as to the questions determined in the former opinion of this court. Defendants in error, however, claim that the judgment should not have been rendered by this court, but that the case should have been remanded for a new trial, because the evidence tends to show, that the purchase of the land at execution sale was in fact for Gage, and deeded to Durrell for Gage's benefit; also that the evidence tends to show, that Durrell consented to the sale at Alpine, and is therefore estopped. Upon the last question we do not think there is sufficient evidence in the record to justify sending the case back for another trial, and we would not remand upon that ground alone. However, the parties may produce more evidence upon that point on another trial, and we will not discuss the facts in the record.

Upon the first question the Court of Civil Appeals found as follows: "On the 4th day of August, 1891, the appellee (appellant) H. C. Dur-

rell purchased at execution sale, by virtue of levies made under valid executions issued upon valid judgments against E. L. Gage, all lands upon which appellees seek in this case to foreclose the mortgages given by Gage; that said sale was in all things regular, and that Durrell received deeds made by virtue of said sale, which were duly executed, and he paid the purchase money, and his deeds were duly recorded in Brewster and Buchel Counties, on August 5, 1891. At the time of said execution sale Durrell's agent, who made the purchase for him, had actual notice of the mortgages given by E. L. Gage on said lands to secure the bonds sued on.'' This was sufficient to show that Durrell acquired all the right of Gage in the lands, and upon this finding this court acted in rendering judgment here.

The record shows, that the statement of facts contains admissions made at the trial in which the substance of the finding of the Court of Civil Appeals is embraced, but after that we find in regular order the testimony of the witness W. W. Turney, who, without objection on the part of the plaintiff in error, testified, in substance, that ''the executions under which the land was sold and the deeds made to Durrell were sent to Giles, an attorney, and that he, Turney, was at the time the attorney of E. L. Gage, employed by the year; that Gage sent to him from Cincinnati a list of the lands to be furnished to the sheriff, in order that the executions might be levied thereon; that Gage made out this list while in Texas, and then went to Cincinnati, where Durrell resided, after which the list was sent to Turney; that he, Turney, bid in the land, and that Gage sent him a draft for the money with which to make the payment, which was also sent from Cincinnati, which was $57 short of the amount required. This sum was, about one year after that time, paid by Durrell's son. Durrell was Gage's father-in-law. Turney had all correspondence about the purchase of the land with Gage, and acted for Gage; never knew anything of Durrell in the matter.

From this state of the record, it appears to us that the parties did not understand the admission made in the statement of facts to operate to the extent of showing that the title actually passed to Durrell by the sale under executions; if it had been so understood by them, the defendant below would have objected to the testimony of Turney quoted above; in fact it would not probably have been offered by plaintiffs.

This court will not render judgment upon reversal except that the facts be such that the court below could not properly have rendered any other judgment than that entered by this court; nor will the court render a judgment upon reversal, if it appear that in order to do justice to the parties other facts are necessary to be passed upon by the court or jury.

Upon the facts found by the Court of Civil Appeals we conceive the law to be, that the plaintiff in error was entitled to a judgment; but upon the evidence in the record as quoted above, it may be that

the land was in fact the property of Gage, and in that event, the acts of Gage after the execution sale would be properly considered in determining whether or not the acts of the bondholders had the effect to release the land mortgaged by him.

It is therefore ordered, that a rehearing be granted in this case, that the judgment heretofore entered by this court be set aside, and that for the errors indicated in the former opinion of this court the judgments of the District Court and Court of Civil Appeals be reversed, and this cause be remanded for trial in accordance with this opinion.

*Reversed and remanded.*

Delivered May 16, 1895.

DENMAN, Associate Justice, did not sit in this case.