CARAWAY v. FOWLER et al. (No. 2203.)*

(Court of Civil Appeals of Texas. Amarillo. Nov. 21, 1923. Rehearing Denied Dec. 5, 1923.)

1. **Vendor and purchaser** ☞265(3)—**To hold subsequent purchaser liable on assumption of indebtedness of his grantor, formal acceptance by original vendor not necessary.**

To hold a subsequent purchaser liable on the assumption of his grantor's indebtedness of part of the purchase price of land, formal acceptance by original grantor or notice thereof is not necessary.

2. **Vendor and purchaser** ☞265(1)—**Subvendee, assuming debt due for the land, cannot be discharged by agreement without creditor's consent.**

A purchaser from vendee of land, assuming the payment of vendor's lien notes, could not, by agreement with the original vendee, as by reconveyance to such vendee, discharge his liability without the consent of the holder of the notes.

3. **Principal and surety** ☞115(2)—**Vendor and purchaser** ☞265(3)—**Purchaser assuming vendor's lien notes, after retransfer to his vendor, was surety; subvendee released from liability on notes by impairment of security.**

Where purchaser of land, after giving a series of vendor's lien notes, payable one each year, in part payment, sold it to W., who assumed such notes and thereafter reconveyed to purchaser, and original vendor afterward transferred, as security for a loan, the last three notes of the series to D. with an agreement between the vendor, purchaser, and D. that lien of the three notes transferred should be superior to the lien of the remaining notes of the series, but W. did not consent to such agreement, and purchaser signed the note for the amount of the notes so transferred to D., W. was the surety on purchaser's original debt, and was released from liability, not only on the notes transferred to D. and renewed in note given D., but also on the other notes of the series, as such agreement with D. impaired the security of such other notes.

**4. Vendor and purchaser ⬡⟹292—Rule that assignee has preference as to securities in payment of notes not applicable where notes transferred to different parties or not guaranteed.**

The rule that when the holder of several notes secured by one lien transfers some of them, guaranteeing their payment and retaining the others, the assignee is entitled to be paid out of the proceeds of the property securing the notes in preference to the assignor, does not apply where the notes are transferred to different parties or where the original payee does not guarantee the payment of the notes transferred, and also is applied merely as between the parties to the transaction and not to the detriment of the rights of third persons.

Appeal from District Court, Donley County; Henry S. Bishop, Judge.

Action by Odos Caraway against U. T. Fowler and another. Judgment against defendant named, but in favor of the other defendant, and plaintiff appeals. Affirmed.

Cole & Simpson, of Clarendon, for appellant.

Underwood, Jackson & Johnson, of Amarillo, for appellees.

BOYCE, J. Odos Caraway brought this suit against U. T. Fowler and J. T. Warren, on five notes for $500 each, executed by the defendant Fowler and payable to one E. F. Hamm. Plaintiff also sought the foreclosure of a vendor's lien securing the payment of said notes retained in a deed of conveyance from Hamm to Fowler. Warren was alleged to be liable, because he had bought said property and assumed the payment of said notes. Judgment was rendered in the trial court for plaintiff against Fowler on the notes with foreclosure of the lien, but plaintiff took nothing against the defendant Warren.

One E. F. Hamm, in November, 1918, conveyed to said U. T. Fowler certain land in Donley county, and in part payment therefor Fowler executed and delivered to Hamm nine vendor's lien notes, the first one for $700 and the others for $500 each, payable one each year for nine consecutive years, beginning with January 1, 1920. Fowler then conveyed the land to J. T. Warren, who assumed the payment of said notes. Warren afterwards reconveyed the land to Fowler, who assumed the payment of said notes and executed notes aggregating $1,000, payable to Warren and secured by second lien on said property. Hamm sold and transferred the nine Fowler notes to plaintiff Odos Caraway. Note No. 1 was paid. After the reconveyance to Fowler, Caraway and Fowler, acting together, procured a loan of $1,500 from Walter Darlington. For this purpose Caraway transferred to Darlington the last three notes of the series of vendor's lien notes above mentioned and which matured on January 1, 1926, 1927, and 1928, respectively, by the transfer making said notes a first lien on the land and at the same time indorsing the following notation on the five notes retained by Caraway and sued on herein: "This note is second and inferior to notes 7, 8, and 9 of this series. Odos Caraway." At the same time Fowler executed to Darlington his note for $1,500, for the purpose of taking up said three vendor's lien notes, payable December 15, 1925, interst payable semiannually, and securing the same by deed of trust on the said land. The proceeds of this loan were paid to Caraway. Warren, so the jury found, did not consent to the agreement to make the Darlington lien the first and superior lien on the property.

Warren's defenses were: (1) That the land was reconveyed to Fowler before Caraway accepted Warren's contract of assumption, and the reconveyance thus put an end to Warren's liability; (2) that the Darlington loan varied the contract under which Warren would be liable and impaired the security which would otherwise have protected such liability, thus releasing the said defendant; (3) that Caraway had, without Warren's consent, extended the time of payment of the notes retained by Caraway; (4) that by express agreement, supported by a valuable consideration, Caraway released him from liability.

We do not state the details of the third and fourth grounds of defense, for the reason that the jury found against Warren on the third ground and we are inclined to the opinion that the record would not sustain the judgment on the fourth ground; but our conclusion as to the second ground stated is sufficient to dispose of the appeal.

[1, 2] The first ground of defense seems to have been abandoned by appellees; at any rate, it is not in our opinion sustained by the record. In order for Caraway to hold Warren liable on his assumption it was not necessary that there should be any formal acceptance or notice thereof. Warren, after once becoming liable, could not, by agreement with Fowler, discharge his liability without Caraway's consent. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672; Smith v. Farmers' Loan & Trust Co., 21 Tex. Civ. App. 170, 51 S. W. 515.

There are a great many decisions that deal with the rights of the respective parties resulting from the assumption by a third person as a part of the consideration on purchase of property of the payment of indebtedness against the property, evidenced by obligation of the grantor. It is quite generally agreed that the creditor may sue such person so assuming the obligation, but

---

⬡⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

there is a diversity of opinion as to the theory on which this right may be sustained. Some authorities hold that the liability of the one assuming the debt to the original creditor, is to be worked out through the application of the doctrine of subrogation; others hold that the liability is direct, "and contractual in its nature." Allen v. Traylor (Tex. Com. App.) 212 S. W. 945; Union Mutual Life Ins. Co. v. Hanford, 143 U. S. 187, 12 Sup. Ct. 437, 36 L. Ed. 118. While there are some statements to the contrary, in the decisions, our courts seem to proceed on the latter theory. Allen v. Traylor, supra, and authorities. We refer to this matter because, under the decisions, the application of the different theories of liability leads to different results in determining the effect of a change in the contract made by agreement between the creditor and the party assuming the debt. Union Mutual Life Insurance Co. v. Hanford, supra. All the authorities agree that, as between the original debtor and the one assuming the payment of the debt, the relation is that of principal and surety, the original debtor being the surety. Our decisions hold that the creditor is not bound to accept this relationship and cannot be required to take affirmative action accordingly on penalty of losing his debt against the original debtor. Shapleigh Hdw. Co. v. Wells, 90 Tex. 110, 37 S. W. 411, 59 Am. St. Rep. 783; Witt v. Amarillo National Bank, (Tex. Civ. App.) 135 S. W. 1108. If, however, the creditor does accept the assumption and deals directly in relation to the obligation with the person assuming the payment, then, if the contractual theory of liability is to be followed, he ought to be bound to recognize the relationship as between the original creditor and the one assuming the debt as established by the contract of assumption. When the creditor is brought into relationship with the one assuming the debt only through the contract of the assumption and he accepts the benefit of that contract, why should he not be bound to respect the relationship of the parties as established by the very contract on which he relies to sustain his own right as against the assumptor? The following authorities hold that the original debtor is to be treated as a surety in determining the effect that a dealing between the creditor and the one assuming payment of the debt will have on the liability of such original debtor. Long v. Patton, 43 Tex. Civ. App. 11, 93 S. W. 519; Hall v. Johnson, 6 Tex. Civ. App. 110, 24 S. W. 861; Union Mutual Life Ins. Co. v. Hanford, 143 U. S. 187, 12 Sup. Ct. 437, 36 L. Ed. 118; Jones on Mortgages (6th Ed.) 742, and authorities there cited. There are, however, authorities to the contrary. Jones on Mortgages, § 742a, and authorities; Sheppard v. May, 115 U. S. 505, 6 Sup. Ct. 119, 29 L. Ed. 456. As is shown by the decision of the Supreme Court of the United States, in the case of Union Mutual Life Insurance Co. v. Hanford, supra, that court had held that the remedy of the original creditor against a grantee assuming payment of the debt was in equity through subrogation, and it was said:

"In that view of the law, there might be difficulties in the way of holding that a person who was under no direct liability to the mortgagee was his principal debtor, and that the only person who was directly liable to him [the original debtor] was chargeable as a surety only, and consequently that the mortgagee, by giving time to the person not directly and primarily liable to him, would discharge the only person who was thus liable."

The court refers in this connection to the case of Sheppard v. May just cited. But the case of Union Mutual Life Insurance Co. v. Hanford came up from Illinois, in which state the theory of "direct liability" was recognized, and the Supreme Court of the United States felt bound to follow that theory in the decision of the case, and it was said that—

"Where such is held to be the relation of the parties, the consequence must follow that any subsequent agreement of the mortgagee with the grantee, without the assent of the grantor, extending the time of payment of the mortgage debt, discharges the grantor from all personal liability for that debt."

It is true that the Supreme Court of this state said in the case of Brannin v. Richardson, 108 Tex. 112, 185 S. W. 562, that the liability of the assumptor to the creditor was through subrogation, referring to the decisions of the Supreme Court of the United States in that connection. But that part of the opinion which follows this statement shows that the court as a matter of fact held to the other theory, saying that Stetson, who assumed the payment of certain notes, "was bound for their payment as a primary obligor." The Commission of Appeals, in the opinion, in the case of Allen v. Traylor, supra, reviewed the decisions and showed that the subrogation theory is not the one applied by our courts. It is also true that this court in the case of Newby v. Harbison (Tex. Civ. App.) 185 S. W. 645, said, in the opinion on motion for rehearing:

"It would seem * * * that our courts sustain the latter view suggested by Mr. Jones [to wit that stated in section 742a, above referred to.]"

The decisions cited in connection with this statement do not appear to us to sustain such conclusion. In the case of Wilson v. J. W. Crowdus Drug Co. (Tex. Com. App.) 222 S. W. 223, it was said that—

"It is well established that, where an assumption has been accepted by the payee, the assumptor becomes the principal and the original debtor his surety as to the creditor, unless otherwise specially contracted by the parties."

It was held on the facts, however, that the record showed a conditional or qualified acceptance. It would seem reasonable that dealing between the creditor and the assumptor would indicate the creditor's acceptance. There does not seem to have been a "qualified acceptance" in this case. Indeed, we do not understand how an acceptance could be qualified or conditional except by agreement with the original debtor.

[3] We are of the opinion, therefore, that the effect of the Darlington loan on Warren's liability is to be determined on the theory that Fowler was then the principal debtor and Warren the surety. Under this view of the case Warren would be released from liability as to the notes transferred to Darlington and renewed in the $1,500 note. But this agreement affected not only these notes but impaired the security for the notes retained by Caraway, in that it made the Darlington loan a first lien on the land. It also changed the contract in reference to the security in that it gave Darlington a summary right to enforce his superior lien, by trustee's sale. This impairment of the lien and change in the contract had the effect of releasing the surety, Warren. Albright v. Allday (Tex. Civ. App.) 37 S. W. 651; Wylie v. Hightower, 74 Tex. 306, 11 S. W. 1119; Durrell v. Farwell, 88 Tex. 98, 30 S. W. 539, 31 S. W. 185.

[4] Appellant contends that the agreement to make the Darlington notes a superior lien ought not to have this effect because, as he argues, that would be the effect of a transfer of the notes to Darlington without any express agreement; that Caraway had the right to sell any of the notes, and the possibility of change in the security that might come about in this way should be held to be within the contemplation of the parties and a part of the contract between them. Our courts have held that when the holder of several notes secured by one lien transfers some of them, guaranteeing their payment and retaining the others, the assignee is entitled "to be paid out of the proceeds of the mortgaged property in preference to the mortgagee who retains one or more notes secured by the same mortgage. "Whitehead v. Fisher, 64 Tex. 641. The Supreme Court, in the case of Douglass v. Blount, 93 Tex. 499, 56 S. W. 334, seemed to be inclined to criticize this holding but it was later followed in the case of Perry v. Dowdell, 38 Tex. Civ. App. 96, 84 S. W. 833, in which writ of error was denied. The rule does not apply, however, where the notes are transferred to different parties or in cases where the original payee does not guarantee the payment of the notes transferred. Martin v. Gray (Tex. Civ. App.) 159 S. W. 118. It would seem, therefore, that such a transfer does not really create a superiority of lien, strictly speaking; for, if it did, then the subsequent purchaser of the other notes would logically stand in the position of the payee. The rule is applied merely as between the parties to the transaction and not to the detriment of the rights of third persons. So we take it in this case that Darlington would not have been awarded a preference prejudicial to Warren in the case of a simple transfer without express agreement for priority. Under this view the express agreement did affect the security and change the contractual rights of the parties in reference thereto.

The judgment of the trial court is therefore affirmed.