# FIDELITY & DEPOSIT CO. OF MARYLAND v. KELSAY LUMBER CO.

Motion No. 9193; No. 1178—5503.

Commission of Appeals of Texas, Section B.

Dec. 20, 1930.

See, also, Rotsky v. Kelsay Lumber Company (Tex. Civ. App.) 19 S.W.(2d) 618.

William F. Young, McLean, Scott & Sayers, and Baskin, Eastus & Greines, all of Fort Worth, for plaintiffs in error.

Thompson & Barwise and H. B. Smith, all of Fort Worth, for defendant in error.

LEDDY, J.

We have been convinced by the argument presented in the surety company's motion for rehearing that defendant in error Rotsky was not entitled to recover judgment against it for the amount recovered against him by defendant in error Kelsay Lumber Company.

The jury found that an agreement was made between the Kelsay Lumber Company, the materialman, Rotsky, the owner, and Helm, the contractor, whereby it was agreed the owner would hold back a sufficient sum of the contract price and pay the same direct to the lumber company, upon completion of the building, for the material furnished by it. It is undisputed that this agreement was made without the knowledge or consent of the surety.

The building contract, the performance of which the surety guaranteed, stipulated that the contract price should be paid by the owner to the contractor in weekly installments, on certificates of the architect, based upon 75 per cent. of the value of the material furnished and labor performed in the construction of the building.

It is the settled doctrine that if the contract be altered in a material respect, without the surety's consent, whether he sustains injury or the contract be to his advantage, it ceases to be his contract, and he is, in law, no longer bound by its obligations. Ryan v. Morton, 65 Tex. 260; Lane & Saylor v. Scott & Culver, 57 Tex. 370; Durrell v. Farwell, 88 Tex. 98, 30 S. W. 539, 31 S. W. 185; Brandt on Surety (2d Ed.) § 345.

The terms and conditions on which the surety assumed responsibility for guaranteeing the faithful performance of the building contract were those specified therein. Any provision in such contract, which tended to lessen the hazard assumed by the surety, it was entitled to have remain unchanged by any act on the part of the obligee in the bond. Finney v. Condon et al., 86 Ill. 78.

The provision in the original contract for the payment on weekly estimates of 75 per cent. of the value of the material and labor put into the building was not only for the protection of the owner, but was a guar-

anty to the surety that there would not be placed in the contractor's hands, prior to the completion of the contract, a sum in excess of 75 per cent. of the value of the labor and material which had been placed in the building. This provision, in view of the stipulation requiring the contractor to furnish all labor and material for the completion of the building, operated to prevent the contractor from coming into possession of funds sufficient in amount to fully discharge the obligations incurred by him for labor and material. Such plan was reasonably calculated to cause materialmen furnishing material to bring pressure to bear upon the contractor for payment out of such weekly installments for material as furnished by them, and thus have a tendency to lessen the risk that the funds might be applied to other purposes by the contractor.

Under the independent agreement made by the owner and the contractor with the lumber company, the contractor was thereby relieved of the duty to apply any portion of the weekly installments paid him under the terms of the original contract to the lumber company in payment for material furnished by it, although the installments received by him included the value of 75 per cent. of such material. The agreement caused to be placed in the contractor's possession funds largely in excess of the amount required to pay 75 per cent. of the value of labor and material used as the work progressed. This was reasonably calculated to increase the risk assumed by the surety company, in that it afforded an opportunity for the contractor to improperly apply such excess funds, which would not have existed had the original contract been carried out in accordance with its terms.

It is true that the agreement made by the lumber company and the contractor, with the approval of the owner, may have rendered it easier for the contractor to perform his contract. Such result, however, would be conditioned upon whether he should act with prudence and discretion in the use of the excess funds thus placed in his hands by virtue of the subsequent agreement. On the other hand, if he failed to exercise proper caution and judgment as to the application of such funds, his ability to complete the contract might be materially lessened to the injury of the surety.

If the owner and contractor had the right to make this new agreement with reference to payments for materials furnished by the lumber company, without affecting the liability of the surety, it would logically follow that they might make similar contracts, with like effect as to the surety, with all others furnishing material to the contractor, and thus have relieved him of the obligation to pay out of the weekly installments for any material whatever, leaving him with no burden except to meet the labor bills. If, under such circumstances, he applied these excess funds for other purposes, he would be unable to complete the contract, and the cost of doing so would fall upon the surety.

While the contractor in this case was only paid the weekly installments provided for in the contract, it is obvious that he was, in effect, paid more than the contract contemplated, because under the terms thereof he was legally obligated to pay for all the materials used in completing the contract, and the independent agreement relieved him of the responsibility of paying anything to the lumber company out of the weekly installments paid him by the owner, and he thereafter received the same amount in weekly installments which he was to receive when under the duty of paying the lumber company for all of the material furnished by it.

The effect of the agreement in question was substantially the same as the one under consideration in the case of McKnight v. Lange (Tex. Civ. App.) 155 S. W. 977. It appeared in that case that the contractor was financially unable to perform the contract under the provision therein for payment of 85 per cent. of the value of labor and material as the work progressed, and he was advanced a large sum by the owner in order to enable him to perform the contract. It was held that such action was a material modification of the original contract and fatal to a recovery against the surety.

The effect of the agreement in the instant case was the same, though resulting from a different plan. Here, instead of advancing directly to the contractor a larger sum than the weekly estimates provided in the contract, the owner made an agreement by which he assumed to pay, when the building should be completed, a large sum to one furnishing material, and thereby relieved the contractor of the duty to pay the same, as he was obligated to do by the terms of the original contract. In other words, while being paid the same proportion of the weekly estimates, the contractor was relieved of the liability imposed upon him by the contract for a large portion of the materials furnished. It is thus seen that exactly the same result was accomplished as if the owner had increased the amount of the weekly estimates and left the contractor under his obligation to pay the lumber company.

Under the terms of the bond executed by the surety, it was not obligated to pay materialmen for the material used in the building to be constructed by the contractor. In

the absence of the fixing of a lien, the surety was not obligated to pay any laborer or materialman on account of the contractor having failed to do so. In this respect the case is unlike that of Hess & Skinner Mfg. Co. v. Turney et al., 110 Tex. 148, 216 S. W. 621, and other cases following the rule therein announced, which are relied upon by defendant in error Rotsky as authority to sustain his recovery against the surety company. In each of these cases the surety was obligated under the terms of the bond, or by reason of the existence of article 5160, Rev. St. 1925 in force at the time the bond was executed, to pay for all material used, and those furnishing material under such a contract had a right of action upon the bond against the surety in the event the contractor or owner failed to pay for same. No such right of action in favor of materialmen or laborers existed in this case.

The facts of this case more nearly correspond to those involved in the case of Porter v. Hope (Tex. Civ. App.) 279 S. W. 535, in which the jury found that Hope and Swift made an agreement, without the knowledge or consent of the surety, that the lumber company would not be paid for the material furnished by it until the building was completed, and it would then be paid out of the funds to be withheld by the owner. As in this case, the contract provided for percentage payments on estimates by the architect as the work progressed. The Court of Civil Appeals reached the conclusion that such an independent agreement was a material alteration of the contract which operated to discharge the surety, and a writ of error was denied by the Supreme Court.

■ It is vigorously urged that, because Rotsky has been required to pay a sum largely in excess of the contract price of the building, he is fairly and justly entitled to reimbursement at the hands of the surety. The situation of which he complains resulted solely from his own voluntary act in altering the terms of the original contract. If this had not been done he could not have been required to pay more than the contract price, nor could a lien have been fixed against his land in excess of that amount. R. S. 1925, articles 5463 and 5468; United States Fidelity & Guaranty Co. v. Henderson County (Com. App.) 276 S. W. 203.

■ Rotsky, having entered into an agreement with the contractor and the lumber company which modified the original contract as to the time, manner, and payee for the payments provided therein, is not in position to claim reimbursement for a loss sustained by reason thereof.

We adhere to the conclusions expressed in our original opinion, except upon the question herein discussed.

For the reason indicated, we recommend that plaintiff in error's motion for rehearing be granted, and that the judgments of the trial court and the Court of Civil Appeals in favor of defendant in error Rotsky against the plaintiff in error Fidelity & Deposit Company of Maryland be reversed, and that defendant in error Rotsky take nothing on his cross-action against plaintiff in error. In all other respects the judgments of the trial court and the Court of Civil Appeals are affirmed.

CURETON, C. J.

Previous judgment is set aside, and judgment entered reversing and rendering the judgments of the district court and Court of Civil Appeals in part, and in part affirming the same, as recommended by the Commission of Appeals.