## J. H. AND ANNIE JAMES ET AL. v. ADAMS & WICKES.

(Case No. 5449.)

1. OWNERS IN COMMON — PARTITION — WARRANTY.— In the partition of land between owners in common in this state, a covenant of general warranty of title to the respective allotments will ordinarily be implied. But if the deed of partition contains a limited warranty, it will generally have the effect of restricting the remedy to the covenant expressed in the deed.

2. CONSTRUCTION. — All the stipulations and covenants of an instrument should be construed together and harmonized, if possible.

3. SAME — WARRANTY.— A deed of partition between owners in common contained a stipulation that the partition was just and fair, and that the lands partitioned were in the Arocha grant only, and also contained a limited warranty as to the lands in the Arocha grant. It afterwards appeared that some of the land partitioned was not within the Arocha grant, and that the parties to the deed had never owned any title to it. *Held,* that the limited warranty referred only to the land within the Arocha grant; that there was a general warranty as to the rest; and one of the parties to the deed, being ousted by a superior title from land included in the partition, and lying outside the lines of the Arocha grant, could demand contribution from the other parties to the deed.

APPEAL from Bexar. Tried below before the Hon. G. H. Noonan.

In 1874, Adams & Wickes, Hancock & West and R. A. Henson and John James jointly held a body of land in Bell county, Texas, which was a portion of a grant to J. N. Arocha,—Adams & Wickes owning an undivided one-third, Hancock & West and R. A. Henson an undivided one-third, and John James an undivided one-third.

In 1874 they joined in a deed of partition between themselves.

This deed of partition was made after the parties had had the body of land claimed by them surveyed by John W. Garretson, a surveyor, who further subdivided the body of land into convenient lots or subdivisions, making a plat of his work.

In the deed of partition the several part owners covenanted with each other that the survey and subdivision made by Garretson was correct, and followed this covenant with one of limited warranty each to the other, to the effect " that we would mutually guaranty title thereto against every person whomsoever lawfully claiming or to claim the same by, through or under us or either of us."

Afterwards a portion of the body of land so partitioned was located upon by third parties as public domain, such locations falling mostly in that portion of the land which, in the division, fell to Adams & Wickes.

Adams & Wickes settled with the holders of such locations, and brought this suit to compel contribution from their former co-tenants, claiming that, notwithstanding the express warranty in the deed, there was an implied warranty.

The facts in the case were in the main agreed upon at the trial, leaving to the court the question whether, upon the pleadings and covenant in the deed, the defendants were liable.

The court below held defendants liable, and rendered judgment in accordance with a stipulation on file as to the amounts.

The assignments of error were as follows:

1. The court erred in rendering judgment against these appellants on the evidence presented.

2. The court erred in holding these appellants liable to H. B. Adams and E. D. L. Wickes in the face of the covenants and special warranty contained in the deed of partition in evidence in this cause.

3. The court erred in holding that, notwithstanding the limited warranty contained in said deed of partition, there was an implied warranty which rendered these appellants liable to Adams & Wickes in this cause.

*I. P. Simpson* and *J. H. McLeary*, for appellants, cited: Pugh *v.* Mays, 60 Tex., 191; Ross *v.* Armstrong, 25 Tex. Sup., 354, and cases

cited; Freeman on Co-tenancy and Partition, sec. 410; Rogers *v.* Turley, 4 Bibb, 356; 3 Washburn, Real Property (3d ed.), pages 404 and 413; Buckner *v.* Street, 15 Federal Law Reporter, page 365, and cases cited; Weiser *v.* Weiser, 30 Am. Dec., page 319, and cases cited.

*H. E. Barnard,* for appellees, cited: Pugh *v.* Mays, 60 Tex., 191; Rowe *v.* Heath, 23 Tex., 614; Brown *v.* Tomlinson, 2 Greene (Ia.), 525; Hawk *v.* McCullough, 21 Ill., 220, 222; Alexander *v.* Schreiber, 10 Mo., 460, 466; Pomeroy, Eq. Jur., secs. 839, 871, and authorities there cited; Emerson *v.* Navarro, 31 Tex., 334; Guedici *v.* Boots, 42 Cal., 452; Sawyer *v.* Cator, 8 Humph. (Tenn.), 256; Patterson *v.* Lansing, 10 Watts, 135; Paschal's Dig. of Dec., arts. 4707, 4709; R. S., art. 3483; Walker *v.* Hall, 15 Ohio St., 362; Feather *v.* Strochoecher, 24 Am. Dec., 342; Nixon *v.* Lindsay, 2 Jones, Eq. (N. C.), 233; Venable *v.* Beauchamp, 28 Am. Dec., 76; Pecot *v.* Page, 26 Mo., 421.

WATTS, J. COM. APP.— Here the distinctions recognized by the common law as between estates held by joint tenants, tenants in common and coparceners have been abolished by statute; and for all practicable purposes these estates have been placed upon the same footing, and are considered estates in common, with the attending rights and remedies which appertained to coparceners at common law.

Therefore, in the partition of land between owners in common in this state, whether by decree of court or the voluntary act of the parties, ordinarily a covenant of general warranty of title to the respective allotments will be implied. Ross *v.* Armstrong, 25 Tex. Supp., 370; Patterson *v.* Lanning, 10 Watts, 136; Smith *v.* Sweringen, 26 Mo., 551; Venable *v.* Beauchamp, 3 Dana, 321.

Here the parties made a voluntary partition whereby they all joined in the execution of the common deed, by which the allotments were set apart to them respectively, and which deed contains the following stipulation: We "do hereby agree and bind ourselves to each other that the above is a fair and just division and allotment of all the interest that we have owned in common in said Arocha grant of land, and that we will mutually guaranty title thereto against every person whomsoever lawfully claiming or to claim the same by, through or under us, or either of us."

The proposition is that these stipulations amounted to a limited warranty and nothing more; and as the paramount outstanding title

which was purchased in by the respective parties as alleged did not originate by, through or under them, or either of them, therefore the suit for contribution could not be maintained.

Notwithstanding the general rule that covenants of warranty will ordinarily be implied in voluntary partitions of land, nevertheless if a limited warranty is clearly expressed in the deed, it will generally have the effect of displacing the implied covenant, and restricting the remedy to the covenant expressed in the deed.

In Rogers v. Turley, 4 Bibb, 356, Chief Justice Boyle said: "But considering it as a deed of partition, yet as there is an express covenant of warranty limiting the responsibility of the parties who executed it, their responsibility cannot be extended by a warranty implied by law."

While in Morris v. Harris, 9 Gill, 27, it was remarked by Judge Frick: "The parties to a partition as parceners may therefore regulate among themselves the extent and limit of their future liability, by the introduction of express covenants to that extent, and will be considered as holding their separate shares independent of any implied warranties, or other conditions than what they have themselves chosen to express. And when the party covenants for quiet enjoyment and possession against himself and those claiming under him, he excludes the idea of a covenant against all the world." See, also, Freeman on Co-tenancy and Partition, § 410.

It will be observed that while the deed under consideration contains apparently a limited warranty of title, it also contains other covenants which should be considered in arriving at its true meaning. The first is that the respective parties to the deed each agree and bind themselves to the other, that the partition then made was a fair and just division and allotment of all the interest then owned by them in common, included within the particular grant. It would be a difficult task to more fully express the intention of the parties with respect to that particular phase of the transaction, than is expressed by the language employed by them in the deed. For the purposes of that partition each obligated himself to the other, that they owned the land then partitioned, and that it was embraced within the Arocha grant, and the allotment and division then made of the land thus owned by them was fair and just.

But as it is clearly shown by the record that the parties did not own all the land partitioned, and that it was not all included in the Arocha grant, it follows that these stipulations were not complied with in the partition.

It also appears that, as to the land included in the Arocha grant,

and owned in common by the parties, the division and allotment was not in proportion to their respective rights in the common property.

Undoubtedly the parties were entitled to a fair and just division and allotment of the common property, and that is what they contracted for in the partition, and it is equally clear that, in the partition had, their anticipations in this respect were not realized, and that their stipulations and covenants were violated; then, unqualified by other considerations, they would certainly have the right to rely upon these stipulations and covenants to secure compensation by way of contribution, each from the other, for any deficit, so as to equalize the allotment according to their respective rights in the common property.

However, the difficulty arises out of the subsequent limited covenant, whereby the parties each "guaranty title" against all claims by, through or under them respectively.

Here it is asserted that the liability of the respective parties to the partition, for a failure of title in whole or in part, is to be tested solely by this limited covenant. And as the superior title which they had purchased in, accordingly as it conflicted with their respective allotments, was not asserted by, through or under them, or either of them, therefore they were not liable at the suit of appellees for contribution.

In respect to the construction of covenants in deeds, Sugden deduced from the authorities four propositions or primary rules, which are approvingly quoted by Mr. Rawle in his work on Covenants for Title, page 498.

The second of these is as follows: "When the first covenant is general, a subsequent limited covenant will not restrain the generality of the preceding covenant; unless an express intention to do so appear, or the covenants be inconsistent." And the fourth of these rules is in these words: "Where the covenants are of divers natures, and concern different things, restrictive words added to one shall not control the generality of the others."

In treating of the construction of several covenants in a deed, and as to the order in which they stood, Sergeant Williams said: "It is questionable whether much regard would now be paid to this mode of construction. The chief object of courts of law at present is to discover the true meaning of the parties, and to construe the covenants accordingly."

While Lord Chief Justice Dallas, in Foord v. Wilson, 8 Taunt.,

543, observed: "The order in which the covenants stand, however transposed, is comparatively unimportant."

In the construction of covenants as well as other portions of the deed, the fundamental rule which requires the entire instrument to be construed together and all its parts harmonized, if that can be done, has full force. The intention of the parties constitutes the contract, and the object and purpose of the courts in the application of the rules of construction is to ascertain and enforce that intention.

Reverting to the covenants under consideration, it will be seen that, as a basis for the partition, the parties agreed and bound themselves that the land then being allotted was embraced within the Arocha grant, and owned by them in common. And it was upon that basis the partition was consummated. If, then, it was the intention of the parties that the limited covenant was to have the effect claimed by appellants, why did they insert the other stipulations? For, if that construction is to prevail, these stipulations would be inoperative and meaningless.

But, as heretofore remarked, these stipulations and covenants must be construed together and harmonized, if that can be reasonably accomplished. Assuming that all the land partitioned was owned by the parties in common, and that it was included in the Arocha grant, and certainly it was so intended, treated and understood by them, then it would seem that the intention of the parties was to limit the latter covenant to the land included in the Arocha grant. They might, and it seems were satisfied to, accept from each other a special warranty as to any conflicting title with that claimed by them to the land within the Arocha grant. But it does not follow that they intended such limited covenant to have full operation as to any other land not included in the particular grant, and which might have been brought into the partition by mistake.

Upon a just and true construction of the deed, the parties stand mutually bound to each other in the following particulars: First, that the partition was just and fair. Second, the lands theretofore owned in common by them on the Arocha grant only were brought into the partition. Third, that as to their respective allotments upon the Arocha grant, they had not theretofore, and would not thereafter, do any act which would interfere with the enjoyment by the others of their respective allotments.

A considerable portion of the land partitioned was not included in the Arocha grant, but in fact was public domain, and the loss

---
Opinion of the court.
---

occasioned thereby fell mostly upon the appellees, and their right to contribution so as to equalize the allotments seems indisputable. We conclude that the judgment ought to be affirmed.

AFFIRMED.

[Opinion adopted May 22, 1885.]

JUSTICE WEST did not sit in this case.