## J. F. IRVING v. T. J. FREEMAN, RECEIVER.

### No. 2291. Decided April 16, 1913.

**1.—Practice on Appeal—Rendering Judgment.**

The Court of Civil Appeals can reverse a judgment in favor of plaintiff where the preponderance of evidence is against his right to recover; but it can not enter final judgment against him unless, discarding all adverse evidence and inferences, the evidence favorable to the plaintiff, with all fair inferences which a jury might draw from it, is not sufficient to support a judgment in his favor. (P. 38.)

**2.—Railway—Negligence.**

Evidence considered, in case of a brakeman on top of a moving train injured by falling between cars by reason of the train being cut by other employes without his knowledge, and held sufficient to support a recovery in his favor, so that the appellate court, reversing because such recovery was against the preponderance of the evidence, could not render judgment for defendant, but should remand for retrial. (Pp. 39-41.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Wood County.

Irving sued Freeman, receiver of the International & G. N. R. Co., and recovered judgment. Defendant appealed, and, judgment being reversed and rendered in his favor, appellee, plaintiff, obtained writ of error.

*Hart, Hart & Landers,* for plaintiff in error.

*Stafford & Giddie, Andrew West,* and *J. A. Germany (King & Morris,* of counsel), for defendant in error.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

Irving instituted this suit in the District Court of Wood County against Freeman, Receiver of the International & Great Northern Railroad Company, to recover damages to him caused by an injury received while plaintiff was engaged as a brakeman in the employ of the defendant in error, through the negligence of other employees engaged with him in switching cars in a freight train, in the yards of the said railroad company at Mincola, Texas. It is unnecessary to go into detail of the pleading of the trial. The trial court entered judgment for Irving, which was reversed by the Court of Civil Appeals of the Fifth District and judgment was entered against the plaintiff, Irving.

It is settled in this court that a Court of Civil Appeals can reverse a judgment of the District Court when against the preponderance of the evidence and remand the case; but it can not enter final judgment against the plaintiff unless, discarding all adverse evidence and inferences, the evidence favorable to the plaintiff, with all fair inferences which a jury might draw from that evidence, is not sufficient to authorize and support the verdict and judgment for the plaintiff. We will therefore state the facts favorable to plaintiff's right to recover and test

the correctness of the judgment rendered by the Court of Civil Appeals thereby.

The plaintiff testified: "I have worked for Thomas J. Freeman as Receiver of the I. & G. N. R. R. Co.; commenced on the 15th day of January two years ago and quit when I got hurt, October 23, 1909. Clayborn handed me his lantern and saw me go to the caboose, well knowing that I did not know that the train was to be cut there; that while I was in the caboose he knew I would not get on the ground and try to outrun the train, it is not customary or the rule. I came on top of the cars, not knowing that there would be a cut made. They did not tell me and I did not know, not being with them at the time. They knew what they were going to do. They did not tell me and I went on top, intending to go to my position. They should not have started until they had a man on the rear end of the train to protect against crossing. I started to the rear end of the train to protect these cars, and while I was starting to cross from the second to the third car from the caboose the cut was made and I lost my balance . . . and fell, and so forth. We had three lanterns; they belonged to Rucker, Clayborn and myself. Clayborn handed his to me and Rucker's was setting on the caboose platform. He knew I was going over the cars. . . . I remained in the caboose to put up the lamps. The train had started before I got on top of the cars." On cross-examination he said: "I worked for the railroad company about six years, nearly that time. We had six or seven cars. The engine was backing up; it was going west; the caboose was next to the engine. I was rear brakeman; my duty was to be on the back end of the train to protect against crossings and cars from getting away. It is a custom and rule among brakemen and crews in working freight trains that each man is supposed to look out for his own position as long as they don't endanger one another's lives, we work principally by signals. You can not get on top in the middle of the car and see a man by the side of it. You could see at the end of it if he had been standing at the end of it. He cut the cars and as I went to step I was not looking to see where he was. I was looking to be sure of my footing so I would not step between the cars. Just as I went to make the step the cars rolled. Clayborn is bound to have made the cut just in time to give them room to roll. I could not say when he made the cut. I know as I went to step the cars rolled away so I could not reach them, but I suppose he made the cut about the time I got to the end of the car, just in time for them to roll away. It is not necessary to tell the other brakeman where we are going unless we endanger one another. The brakeman is supposed to run out from the car and look to see whether or not there is anybody up there, if he is going to endanger another man's life. He was endangering a man's life because this man knew I was coming on top. He knew I would get to the end of the car as soon as possible, and he knew I was not going to get on the ground to outrun the cars. I did not tell him but he had railroaded long enough to know it. I did not tell him because I knew it was not

my duty and I did not know he was going to make the cut. I think he ought to have told me, going to endanger my life he should have told me. I was not supposed to know where those cars were going, but it was where we were headed for. I was supposed to get on the rear end of the train to protect those cars. I did not ask where the cars were to be carried; I made the statement shown me by counsel. When we endanger one another's life we are supposed to tell one another or when we are going to make a cut or switch or anything where one is liable to get hurt; if we tell one another what we are going to do we are supposed to know when anyone gets in danger, supposed to know where each other are. I could not have supposed they were going to the house track, but from the appearances they started that way. Q. I will ask you if you did not make this statement: 'It was not my duty to know it, I did not know we had cars for T. & P. delivery, it was not my duty to know it because it is the switchman's duty to make the cut, and unless he tells you don't know when cuts are to be made?' A. That is a fact unless we know we are going to endanger each other. Q. 'I did not tell brakeman Clayborn I was going on top of the cars. It was not my duty to tell him?' A. 'No, sir; I did not tell him for it was not my duty. I never knew he was going to endanger my life, and he did.' I knew there would be a general shifting around those cars, but I knew they were going to work the house before there would be a general shifting. When brakemen make a cut, they have different things they do then. We work by signals; they give different signals; sometimes they stop and sometimes they go ahead. If they want to stop they give stop signals."

We have carefully examined the evidence given by the plaintiff and we are clearly of the opinion that if there had been no other evidence produced before the jury that jury might have given a verdict for the plaintiff. Under that state of facts the Honorable Court of Civil Appeals had no authority to enter judgment for the defendant although the preponderance of the evidence was against the verdict (if it was). Patrick v. Smith, 90 Texas, 267, 38 S. W., 17. The Court of Civil Appeals had authority to reverse the judgment if the verdict was against the preponderance of the evidence. In the case cited above this court said:

"If there is no evidence to sustain a judgment upon an issue material to a recovery, the appellate court may in its discretion render judgment for the appellant or remand the cause for a new trial. In such a case this court would probably have no more authority to revise their action than it would have to reverse a judgment of the District Court, merely because in their opinion the ends of justice would be promoted by a new trial. But if the evidence be conflicting, and the judgment be reversed because the verdict of the jury or the findings of the trial court are against the great preponderance of the evidence, we think the only proper course is to remand the case. Clearly, where there has been a trial by jury, the appellate court could not, upon reversal upon the

ground stated, render the judgment—because it is such a judgment as the District Court had the power to enter. Its duty, where the verdict is set aside because it is against the great weight of the evidence, is to order a new trial; and, by analogy, it seems that when the Court of Civil Appeals set aside the finding of the trial court for a like reason the cause ought to be remanded. But the statute expressly directs this course 'when there is any matter of fact to be ascertained.' It is not the province of the Court of Civil Appeals to determine a question of fact in the first instance. Their jurisdiction is to set aside a finding by the court or jury, when contrary to the evidence or against such a preponderance of the evidence that in their opinion it ought not to stand."

The extract clearly settles the question before us. Anything additional would be superfluous. We must reverse the judgment of the Court of Civil Appeals. It is therefore ordered that the judgment of that court be reversed and the cause be remanded to the District Court of Wood County. It is further ordered that the plaintiff in error recover all costs of this court and of the Court of Civil Appeals against the defendant in error.

*Reversed and remanded.*