ROBINSON v. McGUIRE et al. (No. 5894.)

(Court of Civil Appeals of Texas. Austin. March 19, 1918.)

1. HOMESTEAD ☞181(3) — ABANDONMENT — SUFFICIENCY OF EVIDENCE.
   In trespass to try title evidence *held* insufficient to show that defendant wife had abandoned her homestead right in the property in controversy.

2. HOMESTEAD ☞181(3) — ABANDONMENT — SUFFICIENCY OF EVIDENCE.
   Evidence *held* to support jury finding that defendant wife had formed no intention not to return to homestead awarded her by partition decree and had not at any time thereafter intended to reside permanently in another state.

3. HOMESTEAD ☞154—LOSS OF RIGHT.
   When a homestead has been acquired it remains such until it has been abandoned or another homestead acquired.

4. HOMESTEAD ☞181(1) — ABANDONMENT — BURDEN OF PROOF.
   When it is shown that a homestead once existed the burden rests upon those who contest its continuance to show that it has been abandoned.

5. HOMESTEAD ☞162(1) — ABANDONMENT — WHAT CONSTITUTES.
   To constitute abandonment it is not sufficient to show a mere discontinuance of the use of the property as a residence, but it must also be shown that such discontinuance was accompanied by an intention never to resume its use as a homestead.

6. HOMESTEAD ☞163 — "ABANDONMENT" — WHAT CONSTITUTES.
   That for several years defendant and her family did not reside upon the lot in question, but upon other property owned by her, and that during a part of that time she and her husband resided in another state, does not necessarily disclose an abandonment of defendant's homestead rights in lot.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abandonment.]

7. HOMESTEAD ☞164 — "ABANDONMENT" — WHAT CONSTITUTES.
   A mere acquisition and occupancy of a home in another governmental subdivision, whether it be another county or another state, is not conclusive proof of abandonment of a homestead, when it is shown that such was not the intention of the person claiming the homestead right.

Appeal from District Court, Travis County; Ireland Graves, Judge.

Trespass to try title by A. Robinson, trustee, against Mrs. M. V. J. McGuire and husband. Judgment for defendants, and plaintiff appeals. Affirmed.

Hart & Patterson, of Austin, for appellant. Warren W. Moore, of Austin, for appellees.

KEY, C. J. Appellant brought this suit against appellees, Mrs. M. V. J. McGuire and her husband, C. H. McGuire, to recover about 62 acres of land situated in Travis county; the petition being in the usual form of trespass to try title. The defendants' answer included a general demurrer, general denial, and plea of homestead. There was a jury trial, which resulted in a verdict and judgment in favor of the defendants, and the plaintiff has appealed.

The proof shows that the property in question was the homestead and community property of W. B. Barr and appellee Mrs. McGuire, on December 31, 1902, at which time W. B. Barr died. After her husband's death, Mrs. Barr bought a house and lot in the city of Austin, which she moved to and occupied with her children for several years, when she sold it and bought another house and lot in the same city, which she subsequently sold; and thereafter she and her present husband, C. H. McGuire, went to Denver, Colo., where they purchased a house and lot which they occupied as a home for

about three years. After Mrs. McGuire moved to Austin she married a man by the name of Westfall, but was subsequently divorced from him and thereafter married her present husband, Mr. McGuire. When Mr. Barr died he and his wife had three living children; and in 1905, in a partition suit, a decree was rendered vesting title to the land in controversy in Richard Everett Barr, subject to the homestead right of his mother, who is now Mrs. McGuire, and one of the appellees in this case. Thereafter, Richard Everett Barr was adjudged a bankrupt, and A. Robinson, the appellant in this case, was appointed trustee of the bankrupt estate; and, as heretofore stated, he instituted this suit to recover the property from Mrs. McGuire and her husband, his contention being that the homestead right which was vested in Mrs. McGuire by the partition decree referred to had been abandoned, and therefore she was not entitled to the possession and use of the premises.

The trial court submitted the case to the jury upon two special issues, which were as follows:

"Question No. 1. Has the defendant, Mrs. M. V. J. McGuire, at any time since the 19th day of October, 1905 (the date of the partition decree above referred to), had or formed an intention not to return to the property known as the home place at Sprinkle, for the purpose of using and occupying same as her home?"

"Question No. 2. At the time of the removal of the defendant to the state of Colorado, or at any time thereafter, has there been an intention on the part of the defendant Mrs. McGuire to reside permanently in Colorado?"

The jury answered both of those questions in the negative; and thereupon judgment was rendered in favor of the defendants.

[1] It is not necessary to set out in detail the several assignments of error presented in appellant's brief, the main contention being that the proof shows that Mrs. McGuire had abandoned her homestead right to the property. Mrs. McGuire testified, and submitted other testimony tending to the same effect, that she never intended to permanently abandon the property in question, but always intended at some time in the future to return and use it as her home. She stated that she moved into Austin for the purpose of educating her children; and that she went to Colorado upon the advice of a physician, hoping to improve the condition of her health. The proof shows that after she and her husband arrived in Denver, Colo., he was offered a position as teacher in one of the schools there, and as there was doubt about his securing the position he had formerly held in a school in Austin, he accepted that employment, and taught there up to the time of the trial of this case. He stated that it was not the intention of himself or wife to remain permanently in Colorado, but that they intended to return to Texas. Mrs. McGuire testified that their reason for buying the house and lot in Denver was because it was for sale so cheap that they regarded it as a good investment, because they could pay for it by monthly installments and save paying rent. The proof also shows that in order to render property a homestead in the state of Colorado, it is necessary to have the clerk where the deed is recorded make an entry upon the record book, showing that the property is claimed as homestead; and this was not done by the McGuires, and Mr. McGuire testified that they did not do so because they claimed the property involved in this suit as their homestead. It was also shown that on one occasion, while in Colorado, Mrs. McGuire voted at an election, but it was not shown that her husband did so. The proof also shows that after moving into Austin, Mrs. McGuire rented the property in controversy, and that she frequently returned to it, and sometimes remained there for days at a time, and that she used the rental obtained for it for the purpose of supporting her children and herself. She testified that their residence in Colorado was never intended to be permanent, and that she had always intended to return to the property in controversy, though no definite date for such return had ever been fixed.

[2] We have not undertaken to set out the language used by the witnesses, but the foregoing statement is substantially correct. Other and disinterested witnesses testified to having heard Mrs. McGuire state, while residing in Austin, that she intended to return to her home at Sprinkle, which is the property in controversy; and our conclusion is that the testimony supports the findings of the jury, and that the undisputed facts and the findings referred to support the action of the trial court in rendering judgment for appellees.

[3-5] Counsel for appellant have cited some authorities in other jurisdictions tending to show that when the owner of a homestead removes to and acquires a home, or exercises rights of citizenship in another state, he thereby loses all homestead rights in property in the state from which he has moved; but, in so far as we have been able to ascertain, that rule does not prevail in Texas. As we understand it, the prevailing doctrine in this state is that, when a homestead has been acquired, it remains such until it has been abandoned, or another homestead acquired; and that, when it is shown that the homestead once existed, the burden of proof rests upon those who contest its continuance to show that it has been abandoned; and that, in order to constitute an abandonment, it is not sufficient to show a mere discontinuance of the use of the property as a residence, but it must also be shown that such discontinuance was accompanied by an intention never to resume its use as a homestead.

[6] In the present case, the undisputed proof shows that for several years Mrs. McGuire and her family have not resided upon the property in question, but upon other

property owned by her; and that during part of that time she and her husband have resided in another state. But those facts do not necessarily disclose an abandonment of Mrs. McGuire's homestead right in the property, because such abandonment did not exist unless she acquired another homestead, or at some time during her absence from the property there was formed in her mind an intention not to return and use it as her homestead. That was the only question in the case about which the testimony left any room for contention or difference of opinion, and, therefore, the trial court very properly restricted the jury to a consideration of that question.

[7] As to the contention that appellees' removal to another state, and the acquisition of a home therein, constituted an abandonment of their homestead rights in this state, even though they may not have acquired a homestead in Colorado and may have intended to return to the property in controversy and use it as a homestead, our conclusion is that such contention is not supported by sound reason. We are unable to perceive why the crossing of a governmental boundary line, whether it be county, state, or national, and the acquisition of a home there, should be given conclusive effect in determining the question of abandonment of a homestead right, in the absence of a statutory or constitutional provision declaring that such effect should be given to it. Of course, such circumstances constitute evidence tending to show abandonment of the homestead right, and if it be shown that the newly acquired home was acquired or used with the intention of making it a homestead, then, whether it be located in another state, or in the same state, the former homestead right will be lost, because no one can have two residence homesteads at the same time. But the mere acquisition and occupancy of a home in another governmental subdivision, whether it be another county or another state, ought not to be held conclusive proof of an abandonment of the homestead, when it is shown that such was not the intention of the person claiming the homestead right. In support of our decision upon this point we copy from the opinion of the Supreme Court in Graves v. Campbell, 74 Tex. 576, 12 S. W. 238, as follows:

"The second assignment is that 'the court erred in the third paragraph of his charge, in this: He tells the jury, "If defendants, W. S. Campbell and wife, Adelia, when they moved away from said property, did not intend not to return to said property, and use it as a homestead, or if they did intend and still intend to return and so use said property and occupy it as a homestead, and that neither of them has ever acquired any other homestead since they went away from the property in controversy, then, in such case, such property was not subject to forced sale, and you will find for defendant." ' There was evidence which made such a charge proper, and we understand the law to be as therein stated. There was no controversy as to the fact that the property was at one time the homestead

of Campbell and his family, but he and family had been absent from it for some time, as claimed, and the great weight of the evidence tended to show, because it was necessary for him to remain in the state of Missouri under treatment by a specialist for a dangerous disease, but with intent at all times to return to it as soon as his condition would permit. So being the evidence, the court, in connection with other proper and relevant charges, instructed the jury that, 'in order for the plaintiff to recover on the grounds of abandonment, you must be satisfied by preponderance of evidence that W. S. Campbell, at the time of leaving the state, did so with the intent to abandon his said homestead, or that since leaving he determined to abandon the same.' Appellant claimed that Campbell had changed his domicile from Texas, where it is shown once to have been, to the state of Missouri, and the great burden of his brief is to establish the proposition that Campbell had changed his domicile and become a citizen or resident of the state of Missouri, without intent to return to his home in Texas. If he had established that proposition to the satisfaction of the jury, under the charge of the court, the verdict would have been in his favor on the question of abandonment. One having acquired domicile does not lose it without removal from it with intent not to return, and the same is true as to abandonment of a homestead once acquired. The burden of proof in either case rests upon the person asserting the affirmative of the proposition. One may wrongfully exercise such powers or privileges as can be exercised lawfully only by an actual citizen of the state in which they are exercised, and this will be evidence of the fact that he is a citizen of the state in which he assumes to exercise rights which pertain only to citizenship, but not conclusive evidence of that fact."

In addition to the case quoted from, the following are cited in support of our decision: Lumpkin v. Nicholson, 10 Tex. Civ. App. 108, 30 S. W. 568; Aultman & Co. v. Allen, 12 Tex. Civ. App. 227, 33 S. W. 679; Farmer v. Hale, 14 Tex. Civ. App. 73, 37 S. W. 164; Gaar, Scott & Co. v. Burge, 49 Tex. Civ. App. 599, 110 S. W. 182. See, also, authorities collated in Harris' Constitution of Texas, beginning on page 853, and similar collation by Judge Speer in the last edition of his excellent treatise on Marital Rights in Texas, on pages 536 and 537. In the last case cited, the Galveston Court of Civil Appeals reviews Trawick v. Harris, 8 Tex. 315, Jordan v. Godman, 19 Tex. 273, and Smith v. Uzzell, 56 Tex. 316, and shows that certain expressions of the court in those cases, concerning the effect of removal to another state, do not establish the law that in this state such removal ipso facto destroys pre-existing homestead rights. In Aultman & Co. v. Allen and Farmer v. Hale, supra, it is held that the ownership and use of another home does not necessarily constitute abandonment of a pre-existing homestead right.

The other questions presented in appellant's brief have been considered, and are decided against him.

It will be noted that this case does not involve any controversy between creditors of one claiming a homestead and such claimant. In the instant case the controversy is between the representative of the creditors of Richard Everett Barr and his mother,

whose title to the property is fixed by a decree of court, which vests the fee-simple title in the son, subject to the homestead right of the mother. Of course, the creditors of Richard Everett Barr can assert no claim to the property, as against his mother, which could not be asserted by him; and, whether or not that distinguishes this from the class of cases in which the question of abandonment of homestead rights has been considered, we have not undertaken to and do not decide.

No error has been shown, and the judgment is affirmed.

Affirmed.