### BELL v. FRANKLIN et al. (No. 6522.)

(Court of Civil Appeals of Texas. San Antonio. March 3, 1921. Rehearing Denied April 13, 1921.)

1. **Homestead ⬿213—Pleadings held to have abandoned wife's claim to homestead in particular tract.**

In a suit to foreclose a lien securing notes executed by a husband to his children by a former marriage, pursuant to a decree entered by agreement, without notice to the wife and attacked by her as in fraud of her homestead rights, the wife's pleadings *held* to abandon her homestead claim in a particular tract of property and place her entire claim for homestead on another tract.

2. **Homestead ⬿164—Not abandoned during temporary occupancy of rented place before moving to new home.**

Where a husband and wife moved from their former homestead to a rented place because of disagreements between the wife and children by a former marriage, with intent to remain there only temporarily and then to move on a tract of 400 acres on which they intended to make their home, and the wife continuously claimed the former homestead as such until they moved on the 400-acre tract, there was no abandonment of the former homestead until the new homestead was designated as such.

3. **Homestead ⬿154—Husband cannot defraud wife in causing abandonment of homestead.**

While the right to select the home belongs to the husband, he cannot perpetrate a fraud on the wife causing the abandonment of one homestead and the loss of another intended homestead.

4. **Homestead ⬿217—Consent decree between husband and children by first marriage held fraud on second wife's homestead rights.**

Where a husband and wife had been living on a place as their homestead and made valuable improvements thereon, but because of disagreements between the wife and children by a former marriage moved temporarily to a rented place, intending to make their home later on a tract of 400 acres, a consent decree between the husband and the children without notice to the wife, entered while they were temporarily so residing on the rented place, by which the children were given the former homestead and the 400-acre tract, subject to a life estate in the husband and a lien on the life estate to secure notes executed by the husband, *held* void as to the wife as a fraud on her homestead rights.

5. **Homestead ⬿164—Wife induced to move to another tract of land occupied temporarily to defeat claims of creditors did not abandon former homestead.**

Where a wife was induced by the husband to move on a tract of land owned by him for the purpose of aiding him in holding off his creditors until he could sell the land, by persuasion and influence and promises that they would move upon another tract as their homestead, the wife acquired no homestead rights therein and did not abandon the right in the former homestead which she continued to claim until they moved on the tract intended as a new homestead.

6. **Homestead ⬿13, 164—Only one homestead allowed; cannot be abandoned by husband alone unless new homestead acquired.**

There can be but one homestead, and until a new homestead is acquired there can be no abandonment of the old one by the act of the husband alone.

**7. Homestead ⟜181(3)—Abandonment before acquisition of new homestead must be clearly shown.**

An abandonment of an old homestead before the acquisition of a new one must be shown by the most clear, conclusive, and undeniable evidence.

**8. Subrogation ⟜26—Payments by persons vested with title under fraudulent decree held voluntary and to give no right of subrogation.**

Under a consent decree between a husband and his children by a former marriage, whereby, in fraud of the wife's homestead rights, title to land was vested in the children subject to a life estate of the husband and subject also to outstanding liens, payments by the children of taxes and interest on prior liens were voluntary, and they were not entitled to be subrogated to the interest of the lien holder.

### On Motion for Rehearing.

**9. Appeal and error ⟜1175(7)—Court of Civil Appeals may reverse on questions of fact.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1626, providing that upon reversal the court shall render such judgment as the court below should have rendered except when it is necessary to remand to ascertain some matter of fact, the Court of Civil Appeals is authorized, and in a proper case required, to reverse on a question of fact when the facts are fully developed and uncontradicted.

**10. Appeal and error ⟜1122(2)—Court of Civil Appeals cannot make new findings.**

On reversal of a judgment on a question of fact, the Court of Civil Appeals can only give effect to the findings of the trial court and cannot make new findings of fact.

**11. Equity ⟜65(2)—Subrogation denied because of conduct of parties.**

Where, in fraud of the homestead rights of a wife, a consent decree was entered between the husband and his children by a former marriage, vesting title to land in the children subject to a life estate in the husband and subject to outstanding liens, the children, in seeking subrogation to the rights of creditors whose prior liens they had paid, did not come into court with such a case as appealed to the equitable powers of the court.

Error from District Court, Williamson County; Ireland Graves, Judge.

Suit by Inez Franklin and others against J. D. Bell and wife. Judgment for plaintiffs, and the defendant Pearl Bell brings error. Reversed and rendered.

F. D. Love and W. H. Nunn, both of Georgetown, for plaintiff in error.

Wilcox & Graves, of Georgetown, for defendants in error.

COBBS, J. This suit was to recover a personal judgment against J. D. Bell and to foreclose lien securing certain notes executed by him in favor of defendants in error upon 400 acres of land out of the M. Davilla grant,

situated in Milam and Williamson counties. The notes sued upon were executed in pursuance of the terms of an agreed judgment against J. D. Bell obtained in the district court of Williamson county between J. D. Bell and the defendants in error herein, his children by a former marriage with their mother, Kate Bell, deceased, which notes were executed by said Bell in pursuance of the terms of a partition settlement embraced in an agreed decree between defendants in error in respect to their claim of community interest between them and said J. D. Bell in their deceased mother's estate, by the terms of which decree there was set apart to defendants in error lot No. 2 and a part of lot No. 1 in the Pietzch First addition to the town of Bartlett, and decreeing a life estate to said J. D. Bell in and to said 400 acres of land in Milam and Williamson counties who surrendered thereby his fee-simple title therein, and to defendants in error decreed the remainder estate, thereby reducing the fee in the property to a mere life estate in J. D. Bell. In this decree it was required that J. D. Bell should execute and deliver to each of his said four children, defendants in error, a note for the sum of $1,500, secured by a lien upon his life estate therein decreed to him in and to said 400 acres of land. Said four notes were duly executed by him to defendants in error. They also sought to recover interest on coupon notes aggregating $757.65 becoming due as interest on prior incumbrance against the said 400 acres of land and taxes thereon aggregating $190, alleged to have been paid by them to protect the estate from foreclosure, to which they claim subrogation to the rights of the original holders, and sought personal judgment against said J. D. Bell with foreclosure against him and his present wife, Pearl Bell, plaintiff in error, on said land.

Pearl Bell, plaintiff in error, was not a party to said decree partitioning said property or to the notes required by the terms of said decree that J. D. Bell should execute, nor has she ever consented thereto or waived her rights against them. Plaintiff in error and J. D. Bell were married in March, 1908, and since February, 1918, have continuously resided together and lived upon said 400-acre tract as their homestead.

Plaintiff in error answered and represented that the said decree of partition was obtained without her knowledge and consent, and was fraudulently procured, and therefore void as against her community interest and homestead rights; the purpose and design being to deprive her of her said homestead and all other rights therein.

Plaintiff in error further represented that the said Bartlett homestead was purchased by J. D. Bell prior to their marriage for $800, and subsequently thereto and after

---

their marriage he spent of their community funds $3,000 in making improvements thereon; that said J. D. Bell moved her from their said home to rented premises in Bartlett prior to said partition decree with the expressed intention on his part to move upon and occupy the said 400 acres as their homestead, but with no purpose on her part to abandon the Bartlett homestead until a new one was acquired.

It was further averred that the 400-acre tract was composed of three separate tracts, viz. 210 acres, 187.9 acres, and 10 acres; that the last two were acquired since his marriage with plaintiff in error, and $2,000 of their community funds expended thereon in improving it; that the 210 acres was purchased by him before their marriage, and $5,000 of their community funds expended in making the improvements thereon.

She prayed that the decree be adjudged void, and that her community rights be established therein, and her homestead right be protected in the 400-acre tract.

J. D. Bell answered, pleading certain offsets and credits on said notes, and prayed, if said decree be set aside on the answer of his said wife, Pearl Bell, plaintiff in error, then the notes be declared without consideration and for judgment against them.

The case was tried by the court without a jury, and personal judgment entered for defendants in error for amount due on the notes sued on, amount paid as interest on the alleged prior incumbrances, and amount paid on the taxes, against J. D. Bell, and foreclosure of the lien on the 400 acres against him and plaintiff in error.

The court made special findings in the judgment, then filed additional separate special findings of fact and conclusions of law. There was also filed a statement of all the facts. Some of the court's findings and conclusions of law are challenged by plaintiffs in error. However, without directly referring to any complaints in respect thereto, specifically made by assignments, we will discuss in this opinion the various propositions of law raised and the facts as shown by the record applicable when necessary, as we understand it.

The first assignment challenges the judgment of the court in holding the decree of partition of the 5th of July, 1917, between Virgie Bell and others and J. D. Bell, as valid against this plaintiff in error, as being an alienation of the homestead right to which she was not a party, and hence void as to her rights.

[1] We are not called upon to pass upon her homestead claim in and to said Bartlett property with the view of reinvesting her therein, as she has abandoned that by her subsequent acts and conduct. If not that, still she has clearly done so by her pleading, and placed her entire claim for homestead on the 400-acre tract.

[2] The evidence is very clear that she did not, however, abandon her homestead claim at or before the decree in and to the Bartlett property, in which she had a clear homestead right until she made or designated her home on the 400-acre tract.

The court found that Kate Bell, his former wife, died intestate June 28, 1906, and on the 30th of March, 1908, he intermarried with plaintiff in error, and at the death of Kate Bell she and J. D. Bell owned community property, including such an interest in the Bartlett homestead; that tracts Nos. 2 and 3 (part of the 400 acres) were purchased after J. D. Bell married with plaintiff in error; that tracts Nos. 1, 2, and 3, composing the 400 acres of farm land, are now used as the homestead of J. D. Bell and plaintiff in error; that at the time of the decree of partition they were living on rented premises in the town of Bartlett, because it was not agreeable to the family for plaintiff in error to remain there with the daughters; that when they went to the rented place it was a temporary move, as it was the intention of J. D. Bell to move on the 400 acres for their homestead. He had not previously lived there, on the 400-acre homestead, though he had built a garage with one room over it which he and plaintiff in error afterward moved into and occupied a few weeks before the house then being completed was finished, which they now live in as a homestead. Prior to this they moved from Bartlett to a house on a Williamson county tract then owned by J. D. Bell, heavily incumbered with debt, and designated as their homestead. It further found that plaintiff in error demanded and requested J. D. Bell to provide her a home, expressing a willingness to live at any home he might provide. They lived on Williamson county farm only a few months, and never really intended to make it their permanent home. Pearl Bell was not a party to the decree.

[3] We think the evidence, in connection with the court's findings, sufficiently establishes the fact that the Bartlett place was continuously claimed as her homestead until it was abandoned by moving to the present home, and that neither intended to abandon the Bartlett homestead as such until her husband secured for them the present homestead. She always expressed a willingness to accept any home he would provide for her, and he always told her it was to be on the 400-acre tract where the court found their homestead now to be. He left the Bartlett homestead with the express intention of making the 400-acre tract their home. It is true he induced her to move with him to the Williamson county tract, where they remained but a short time, as she swore, for the purpose of aiding him in defeating or holding off creditors until he could sell that land, which he did in but a short time. She asked him to make that his homestead when

they moved there, but he refused to do that because of heavy incumbrances thereon, still declaring the 400-acre tract was intended to be their home as it was and did become. He had the right to make the home. That right belongs to the husband, but in doing that the law will not permit him to perpetrate a fraud upon his wife to cause the abandonment of the one and the loss of the other.

[4, 5] In the shape of these pleadings and the evidence, the plaintiff in error is entitled to a homestead unless by her acts and conduct she has so placed herself in a position where she can no longer defend against that decree or the lien securing the notes. We think at the time of the decree and the execution of those notes they were void as to her. They had lived on that Bartlett place as their homestead and made valuable improvements thereon, impressing on it in every way the homestead character. Because she and J. D. Bell's children by his first marriage, defendants in error, could not get along together, J. D. Bell, the father and husband, persuaded and induced her to temporarily move to a rented place until he could make his home on the 400-acre tract, which he intended to do. Even then she declared her home to be the Bartlett place, against the persuasion of all parties, including lawyers sent to see her in the interest of defendants in error, and made a written declaration to that effect. At this juncture, and while temporarily in the rented place in Bartlett, this partition was made and his fee-simple title to this 400-acre tract of land cut down to a life estate with remainder over to these defendants in error, with a lien fixed on this life estate in the land as security, to which plaintiff in error was not a party nor had any notice. As plaintiff in error was still asserting her homestead rights therein, and had not abandoned it in fact nor at that time by acquiring another, such a lien upon that property against her homestead rights was void and unenforceable as to her. She did not, under the peculiar circumstances, by going temporarily to the Williamson county land, upon the promises made, persuasion and influence of her husband, acquire any homestead rights there, for it was a mere temporary occupancy, done with a fraudulent intent and purpose of her husband to defraud some creditor, with the distinct statement that they were not to acquire any homestead there, but ultimately were to go to the 400-acre tract.

When J. D. Bell induced his wife to leave their Bartlett home, it enabled him, without his wife's knowledge or consent, to make this generous settlement with his children, cutting his title in the 400 acres down to only a life estate in the other property in which plaintiff in error likewise had her community interest. He placed her at a disadvantage, whereby she was overreached. Though the husband of plaintiff in error, he was used as a witness by defendants in error, and, while denying any intent to defraud his wife, he admitted that in settling with "the girls" he had given them "a little the better of the settlement, but then you might say that was free on my part." It was undoubtedly free, but at the same time he was attempting to deprive his wife of everything, even her home, in the interest of the "girls," who during the absence of plaintiff in error from the Bartlett home took possession of it, and when plaintiff in error returned objected to her living in the home, and she left and lived for a while with her mother. Her husband took her to the 400-acre tract in Milam county by assuring her that it would be their home, and they had lived there more than two years at the time of the trial. After plaintiff in error had been forced out of the Bartlett home, attorneys endeavored to induce her to sign certain papers, conveying all the property to the defendants in error, the only condition to which she would agree being that the 400-acre tract was given her as a homestead. The attorney was unwilling for her to read the papers or to show them to her attorney. Evidently the suit between J. D. Bell and his daughters was a very friendly one, and for the purpose of accomplishing what had not been obtained by the endeavor to secure the signature of plaintiff in error to the papers. After obtaining that judgment, notes were executed by J. D. Bell to his daughters, and a complacent mortgage given on the 400-acre tract in Milam county. The plain inference from the settlement is that J. D. Bell and daughters were to have all the property, and plaintiff in error would be out on the world without a home. As said by Edith Bell, one of the "girls": "We girls and our stepmother did not get along very well together." J. D. Bell, in the lawsuit between him and his daughters, paid the attorney's fee of the latter as well as all other expenses. Of course, the witness testified that she had no intention to defraud her stepmother, merely to take all of the property from her. Virgie, who seems to have conceived the plan for the settlement with her father and had it carried into execution, did not testify. She married and went to New York. She is the eldest girl.

[6, 7] There can be but one homestead, and until a new homestead is acquired there can be no abandonment of the old by the act of the husband alone. Plaintiff in error tenaciously held to the homestead in Bartlett until they occupied the one on the 400 acres. As the decree and the notes were executed at the very time she was temporarily residing in a rented place in Bartlett and when she was claiming it in writing and otherwise as her homestead, about which there can be no dispute, the entire transaction was void as against her rights. An abandonment of an old homestead before the acquisition of a new one must be shown "on the most clear,

conclusive, and undeniable evidence of abandonment of the homestead," as said by Mr. Justice Coke in Cross v. Everts, 28 Tex. 533. Speaking on the same subject, the late Mr. Justice Sawnie Robertson, in Crockett v. Templeton, 65 Tex. 135, said:

"Without her consent he can mantle no other habitation w'th homestead protections. Until he and she unite in abandoning the part she occupies, that is their homestead. * * * She can no more abandon his to his creditors than he can hers."

See, also, Robinson v. McGuire, 203 S. W. 415; Hudgins v. Thompson et al., 163 S. W. 659; Parker v. Schrimsher, 172 S. W. 169.

The temporary removal to Williamson county land under her husband's persuasion, with the intent not to make that their homestead, but to ultimately make their home where it now is, was not an abandonment of any homestead right. It did not breathe into this void decree and these void notes, executed while the homestead right existed, such vitality as would destroy her homestead rights in the Bartlett property, or be construed as an abandonment thereof, or take away her right to acquire, according to their intention and preparation, a homestead right in the 400-acre tract. There was no abandonment of the former homestead until the latter was acquired. And all through these preliminary stages the void notes and void decree continued to be invalid and remained as such against the homestead right of plaintiff in error. Of course, as against J. D. Bell, those notes are valid obligations, but not as against her homestead rights.

[8] In regard to the assignments complaining of the action of the court in holding defendants in error were entitled to have judgment by way of subrogation, because they paid off matured interest on prior valid liens and state and county taxes, there is no evidence to show they were paid at the instance and request of J. D. Bell or his wife. If the payments were paid without request, there can be no subrogation. They would be no more nor less than voluntary payments. The payments were made with full knowledge of all the facts. Scott v. Slaughter, 35 Tex. Civ. App. 524, 80 S. W. 645; Pitts v. Elsler, 87 Tex. 347, 28 S. W. 518; Taylor v. Hall, 71 Tex. 216, 9 S. W. 141; Gould v. McFall, 118 Pa. 455, 12 Atl. 336, 4 Am. St. Rep. 606; Gilliam v. Alford, 69 Tex. 271, 6 S. W. 757; Moreland v. Atchison, 19 Tex. 308; Pomeroy's Eq. § 851.

There was no agreement to subrogate the defendants in error. And in view of this particular transaction, while in certain cases where a party has an interest to be protected he may substitute himself to the interest of the lien holder, it does not apply here, because this case does not place him in such position. Fievel v. Zuber, 67 Tex. 279, 280, 3 S. W. 273.

The recital in the judgment or decree is "that the title to the said land be, and it is hereby, vested in Virgie Bell, Margaret McCarty, Inez Bell, and Edith Bell (defendants in error), as joint owners and tenants in common, subject to the life estate therein of the said J. D. Bell, and subject also to the outstanding liens against the said land." This language does not bind them by an assumpsit to pay off the liens; neither does it bind Bell by any warranty to do so. At most, they secure his equity of redemption, to preserve which it became necessary to their own interest in discharge. Miller v. De Graffenried, 43 Colo. 306, 95 Pac. 941, 942, 15 Ann. Cas. 981; Hancock v. Fleming, 103 Ind. 533, 3 N. E. 254, 255; Walther v. Briggs, 69 Minn. 98, 71 N. W. 909; Drury v. Holden, 121 Ill. 130, 13 N. E. 548; McNaughton v. Burke, 63 Neb. 704, 89 N. W. 274, 275; James v. Adams, 64 Tex. 193; Gunst v. Pelham, 74 Tex. 587, 12 S. W. 233; Fievel v. Zuber, 67 Tex. 278, 3 S. W. 273.

We believe the court has erred in its judgment in holding that the decree and notes present valid obligations against the homestead right of plaintiff in error, and further erred in foreclosing liens on those notes given defendant in error and decreeing against the homestead right a foreclosure of all the liens. Therefore the judgment is here reversed, and rendered in favor of plaintiff in error for the land sued for to the extent of her homestead rights in 200 acres, to be selected by her out of the 400 acres. J. D. Bell did not appeal, and no order is made in respect to him.

Reversed and rendered.

## On Motion for Rehearing.

[9, 10] The first ground of the motion for a rehearing is that this court has no power to reverse the judgment on a question of fact determined by the trial court. That is exactly what the Court of Civil Appeals, in certain cases, is required to do by article 1626, Vernon's Sayles' Civil Statutes, unless it is necessary that some matter of fact be ascertained, in which case it would be our duty to remand. Durrell v. Farwell, 88 Tex. 98, 30 S. W. 539, 31 S. W. 185; Henne & Meyer v. Moultrie, 97 Tex. 216, 77 S. W. 607; Cook v. Spencer, 91 S. W. 813; Wininger v. Railway, 105 Tex. 56, 146 S. W. 1150; Irving v. Freeman, 106 Tex. 38, 155 S. W. 931; McClary v. Trezevant & Cochran, 112 S. W. 954. The facts seem fully developed in this case, and are uncontradicted. There is no necessity to remand to ascertain any additional fact. It is not claimed that it should be remanded for that purpose. We are giving effect to the findings of the trial court, and do not undertake to make any new findings of fact, for we cannot do that. Eidson v. Reeder, 101 Tex. 202, 105 S. W. 1113. We are simply applying the well-established rule.

After discarding all adverse evidence and inferences, the evidence was not sufficient to support the judgment in favor of defendants in error.

[11] The findings of the court establish the fact that the entire transaction was a fraud upon the rights of plaintiff in error. The Bartlett homestead was taken from her as well' as all her other community interest in other lands and property. By virtue of that decree of which she had no knowledge a judgment was entered whereby the title to all other land was reduced to a life estate and a lien created by the decree to secure the debt established thereon upon the 400-acre homestead tract. In view of their actions no court of equity will aid them in their subrogation to the liens sought to be foreclosed on the homestead now occupied by her. When that decree was entered, Bell knew and had declared the 400-acre tract was to be the homestead.

It may be that plaintiff in error was entitled to have the Bartlett homestead set aside to her in the first instance and have her community rights settled, but that was not done, and the question is not before us.

At any rate defendants in error have not presented such a case in equity for relief or subrogation that will find favor. See, under the subject, "He who comes into equity must come with clean hands," 4 A. L. R. 44.

The community estates by both marriages are as follows:

The community property of the first marriage in which defendants in error had interest, and to be accounted for, was:

Hamblin farm (210 acres of the 400-acre
   tract) less improvements and incumbrance  $3,000 00
Homestead in town, less improvements......   800 00
10 shares bank stock.........................  1,200 00
                                            -----------
                                             $5,000 00

The community property of the second marriage, disposed of in the said partition, was:

187 acres and 10 acres out of the 400-acre
   tract, subject to $2,750 debt...............  $ 7,100 00
Improvements on 210-acre tract............   4,200 00
Improvements on town homestead.........   2,000 00
                                            -----------
                                             $13,300 00

The evidence is conclusive that the last-named items of purchases and improvements were made after the second marriage, and the proof does not show that they were paid for either from the separate funds of J. D. Bell or from community funds of the first marriage.

The court finds as a fact:

That it cannot be said with confidence which character of funds were used. "According to a statement made by J. D. Bell in 1914, the entire interest of the defendants in error in the estate of their deceased mother was only $2,-500. He, however, in the decree, gave them $6,000 in notes, the Bartlett property, of the value of $400, and the remainder estate in the 400-acre tract. At the time of the judg-ment the 210 acres were worth $85 to $90 per acre, and the remainder of the 400-acre tract was worth from $40 to $50 per acre. These tracts were, however, incumbered to the extent of $9,750. Mr. Bell testified: 'I feel like I gave them a little the better of it in the settlement, but then you might say that was free on my part.' "

Anticipating that plaintiff in error's husband, in accordance with his repeated declarations from beginning to end would establish and intended to and did establish the homestead on the 400-acre tract where they are now living, she testified:

"Mr. Bell built a garage, and over that he built a house for me to live in, and then we put up barns, hog fencing, and a silo on it. I don't know what all we haven't done with the intention of making it a home. With declarations of Mr. Bell with reference to making further improvements or going to build a house on the property, it has always been our plan, when we were financially able, to build a house upon this tract of land. I cannot tell the date when those improvements were made on the tract of land; I have not kept track of the improvements in any way. I am of the opinion that most of the improvements were made before the judgment was rendered in the case here in July, 1917; that is my best judgment about it. The garage was built before the judgment was rendered, and over that garage was supposed to be my temporary home until he had the means to fix a better abode. There was a garage built on the Davilla place while I was living in Bartlett, and there was provisions made over the garage for a temporary home; that provision was one room, and I lived in that room just after I moved down to the Davilla farm; I lived in it from May to September 1918. I don't remember when that room was put up. I objected to it as a home, but finally was reduced to move into it, as I had nowhere else to go."

The court found, and the facts so established it, that when Bell took his wife from the Bartlett home he intended then (as the proof showed) and ever afterward to move upon the 400-acre tract, and "built a garage with one room over the garage, which was afterwards occupied by J. D. Bell and Pearl Bell for a few days or weeks while the house in which they now live was being completed."

From the inception of that decree on down to the end not only a fraud, but a great injustice, has been done to the community and homestead rights of plaintiff in error; and the defendants in error do not come into court with such a case as appeals to the equitable powers of the court. The pleadings of neither party are perhaps so framed as to permit the granting of other relief than given herein.

Apparently defendants in error have received from plaintiffs in error's community estate, through their father's and her husband's acts, more than sufficient to take care of the liens.

The motion for rehearing is overruled.